UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

MALIBU, MEDIA, LLC,

     Plaintiff,

v.                         Case No:  2:12-cv-00266-JES-DNF

JOHN DOES 1–25,

     Defendants.

_____/

## DOE 24'S, SPECIAL APPEARANCE MOTION TO DISMISS PARTY, MOTION TO QUASH SUBPOENA, MOTION FOR PROTECTIVE ORDER, MOTION TO SEVER FOR IMPROPER JOINDER, MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION, AND MEMORANDUM

COMES NOW defendant, Doe 24 (IP Address 173.78.205.194) ("Doe 24" or "Defendant"), by and through the undersigned counsel, who hereby files this Special Appearance Motion to Dismiss Party, Motion to Quash Subpoena, Motion for Protective Order, Motion to Sever for Improper Joinder, Motion to Dismiss for Failure to State a Cause of Action, and Memorandum, against MALIBU MEDIA, LLC ("Malibu" or "Plaintiff") and would show as follows.

## I.  Introduction and Factual Background.

1. On May 15, 2012, Plaintiff filed its original Complaint for Copyright Infringement and Demand for Jury Trial **(Dkt. # 1)** ("Complaint") in the U.S. District Court, Middle District of Florida, Ft. Myers Division, purporting joinder of twenty-five unidentified defendants alleged to have committed direct copyright infringement (Count I) and contributory infringement (Count II) upon Malibu's claim of copyright ownership of 107 pornographic

movies[1] from a single website through what Malibu refers to as a "siterip," (Compl., ¶ 2) using a file sharing protocol known as BitTorrent (Compl., ¶ 16).

2. Malibu claims to have registered or has applied to register 26 of the 107 movies with the United States Copyright Office.   (Compl., ¶ 13).   Malibu refers to all 107 movies as the "Works."  (Compl., ¶ 3).  For the purpose of these motions Defendant refers to the 26 movies alleged to be duly registered as the "Registered Works" and the other 81 as the "Unregistered Works."

3. On May 29, 2012, Malibu filed Plaintiff's Motion For Leave To Serve Third Party Prior To A Rule 26(f) Conference **(Dkt. # 5)** ("Discovery Motion") and Memorandum of Law in Support thereof ("Malibu's Memorandum") **(Dkt. # 5-1).**

4. On May 30, 2012, this Honorable Court entered its Order Granting Plaintiff's Discovery Motion ("Discovery Order") **(Dkt. # 6)** allowing Malibu to serve subpoenas upon non-party Internet Service Providers ("ISPs") seeking internet subscriber information "solely for the purposes of protecting and enforcing Plaintiff's rights as set forth in its Complaint."[2] (Discovery Order, ¶ 5.)

5. Defendant received correspondence from Verizon Internet Services, an ISP, dated June 30, 2012 ("Notice"), asserting that pursuant to the copy of a subpoena attached thereto, entitled, "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO

---

[1] It may be an open question whether plaintiff's works are entitled to copyright protection.  In re BitTorrent Adult Film Copyright Infringement Cases, 2:11-cv-3995, Order and Report and Recommendation at *12 n.8 (E.D.N.Y. May 1, 2012) (citing Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 447 n.2 (D. Mass. 2011) (it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement")).

[2] Malibu's Memorandum **(Dkt. # 5-1, p. 3),** the Subpoena, the letter from Verizon Internet Services, and this Court's Order  **(Dkt. # 6)** each seek different combinations of release of Doe 24's name, address, telephone number, email address, and MAC address.

PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION" (**Exhibit "A"** hereto) issued by the U.S. District Court for the Northern District of Texas, Verizon Internet Services will disclose to Plaintiff's counsel in Miami, Florida, on July 16, 2012 at 9:30 a.m., Defendant's privileged information including his or her "name, address, and telephone number." (Subpoena)

6. Reading Malibu's Complaint in a light most favorable to the Plaintiff, it describes BitTorrent as "one of the most common peer-to-peer file sharing protocols . . . used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic." (Compl., ¶ 16.) Malibu's Complaint describes the BitTorrent protocol in detail. (See generally Compl., ¶¶ 16-37.)

7. Plaintiff claims that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition). (Compl., ¶ 5.)

8. Plaintiff claims that venue in the Middle District of Florida is proper under 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1400(a). (Compl., ¶ 7.)

9. Plaintiff claims that "[u]pon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Works." (Compl., ¶ 30.)

10. Plaintiff demands "statutory damages in the amount of $150,000 per Defendant, per registered Work infringed, pursuant to 17 U.S.C. § 504-(a) and (c)," (Compl., p. 9, Wherefore Clause, ¶ D; p. 11, Wherefore Clause, ¶ E ) or its "actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b)" (Compl., p. 10, Wherefore Clause, ¶ D; p. 11, Wherefore Clause, ¶ E).

11. Malibu also demands injunctive relief.  More specifically, In its prayers for relief for both Counts Malibu demands judgment to "[p]ermanently enjoin each Defendant and all other persons[3] who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Works;" (Compl., p. 9, Wherefore Clause, ¶ A; p. 11, Wherefore Clause, ¶ A); "[o]rder that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under each such Defendant's possession, custody or control" (Compl., p. 9, Wherefore Clause, ¶ B; p. 11, Wherefore Clause, ¶ B); and "[o]rder that each Defendant delete and permanently remove the copy of the Works each Defendant has on the computers under Defendant's possession, custody or control" (Compl., p. 9, Wherefore Clause, ¶ C; p. 11, Wherefore Clause, ¶ C).

12. Defendant timely makes this special appearance to bring forth these motions and memorandum of law.

13. This special appearance is not to be construed as a general appearance by undersigned counsel under Local Rule 2.03(a), or by Doe 24, who has not been subject to service of process in this action.

14. Defendant retained the undersigned attorney as a result of Plaintiff's Complaint, and is obligated to pay its attorney a reasonable fee for services rendered and costs incurred in bringing forth these motions.

15. Title 17 U.S.C. § 505 provides that in any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party and may also award a reasonable attorney's fee to the prevailing party as part of the costs.

---

[3]  Surely, the Court cannot enjoin "other persons" not named in the lawsuit.

**ARGUMENT**

**II.     Motion to Quash Subpoena for Failing to Sufficiently Plead Personal Jurisdiction.**

In a recent (May 24, 2012) ruling from this Court, upon reviewing personal jurisdiction as pleaded in a substantially similar complaint, the Court quashed the pre-Rule 26(f) conference ISP subpoena.  Nu Image, Inc. v. Does 1-3,932, No. 2:11-cv-545-SPC-JES, 2012 WL 1890829 (M.D. Fla. Sept. 26, 2011).   The Honorable Judge Steele held that the complaint failed to sufficiently invoke this Court's personal jurisdiction over the Doe defendants and wrote:

> A court's personal jurisdiction over a defendant is not a meaningless gesture.  'The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties.'  Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982)(citing cases).  The requirement of personal jurisdiction flows from the Due Process Clause, and 'recognizes and protects an individual liberty interest.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.  Thus, the test for personal jurisdiction requires that the maintenance of the suit not offend traditional notions of fair play and substantial justice.'  Id. at 702-03 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(internal quotations marks and elipses omitted).  'A court without personal jurisdiction is powerless to take further action.'  Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).
> . . .
> The Complaint alleges a single count of copyright infringement, and premises subject matter jurisdiction on federal question jurisdiction pursuant to the copyright laws of the United States.  The Complaint continues that upon 'information and belief', each of the 3,932 defendants may be found in the Middle District of Florida 'and/or a substantial part of the acts of infringement' occurred in this District.  Upon further 'information and belief', plaintiff alleges that personal jurisdiction in this District is proper because each defendant 'distributed and offered to distribute over the Internet copyrighted works' 'in every jurisdiction in the United States including this one.'  (citations omitted)
>
> The Court finds that these allegations in the Complaint are insufficient to allege personal jurisdiction over any defendant under the Florida long-arm statute and the Due Process Clause.
>
> . . . The participation in a BitTorrent swarm does not provide the necessary minimum contact with the State of Florida. See, e.g., Liberty Media Holding, LLC v. Tabora, No. 11-cv-651-IEG (JMA), 2012 WL 28788 (S.D. Cal. Jan. 4, 2012).

<u>Nu Image, Inc. v. Does 1-3,932</u>, No. 2:11-cv-545-SPC-JES, 2012 WL 1890829, Order and Opinion, at *3-6 (M.D. Fla. May 24, 2012).  As in <u>Nu Image, Inc. v. Does 1-3,932</u>, the Plaintiff's Complaint also premises subject matter jurisdiction on federal question jurisdiction pursuant to the copyright laws of the United States.  (Compl., ¶¶ 1, 5.)  Unlike in <u>Nu Image, Inc. v. Does 1-3,932</u>, the present Complaint, albeit vague and general, alleges additional (arguably more sufficient) grounds upon which personal jurisdiction may be found than did the plaintiff in <u>Nu Image, Inc. v. Does 1-3,932</u>, however, all such general allegations are premised on the singular event of one alleged Internet activity.  Malibu alleges that "the Defendants' acts of copyright infringement occurred using and Internet Protocol address ('IP address') traced to a physical address located with this District . . . and each Defendant committed the tortious conduct alleged in this Complaint in the Middle District of Florida, and (a) each Defendant resides in the Middle District of Florida, and/or (b) each Defendant has engaged in continuous and systematic business activity, or has contracted anywhere to supply goods or services in the Middle District of Florida."  (Compl., ¶ 6.)  And, "a substantial part of the events . . . occurred in this District . . . a Defendant resides (and therefore can be found) in this District and all of the Defendants reside in this State."  (Compl., ¶ 7.)

Although this Plaintiff may have more specifically pleaded personal jurisdiction over the defendants than did the <u>Nu Image, Inc. v. Does 1-3,932</u> plaintiff, Malibu's entire recitation is based on the singular premise that "**[u]pon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Works.**"  (Compl., ¶ 30 (emphasis added.))  This premise fails to meet the necessary threshold to confer personal jurisdiction over the Defendant, because "[t]he participation in a BitTorrent swarm does not provide the necessary minimum contact with the State of Florida."  <u>Nu Image, Inc. v. Does 1-</u>

3,932, No. 2:11-cv-545-SPC-JES, 2012 WL 1890829, Order and Opinion, at *6 (M.D. Fla. May

24, 2012).  Plaintiff attempts to establish jurisdiction by pleading that use of the Internet confers

such on Doe 1,793.  This Court should not allow such a broad interpretation.  Many courts have

held that the use of the Internet does not automatically confer jurisdiction.  In GTE New Media

Services, Inc. v. BellSouth, Corp., the court stated that:

> Indeed, under this view, personal jurisdiction in internet-related cases would
> almost always be found in any forum in the country.  We do not believe that the
> advent of advanced technology, say, as with the Internet, should vitiate long-held
> and inviolate principles of federal court jurisdiction . . . .  In the context of the
> Internet, GTE's expansive theory of personal jurisdiction would shred these
> constitutional assurances out of practical existence.  Our sister courts have not
> accepted such approach, and neither shall we.

GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000).  See

also ALS Scan, Inc. v. Digital Services Consultants, Inc., 239 F.3d 707 (4th Cir. 2002); Sinclair

v. TubeSockTedD, 596 F. Supp. 2d 128, 133 (D.D.C. 2009).  In Hard Drive Prods., Inc. v. Does

1-90, the court noted that "[e]ven if plaintiff could show that each of the Doe defendants

transferred a piece of the file to a California resident, this single, miniscule action would not

constitute 'minimum contacts' with the state of California" and "[i]n the absence of a showing

that minimum contacts exist for each Doe defendant, the court cannot exercise personal

jurisdiction over the defendants."  Hard Drive Prods., Inc. v. Does 1-90, 2012 WL 1094653, at

*5 (N.D. Cal. Mar. 30, 2012) (severing Does 2-90 and denying discovery).  Therefore, consistent

with the law and facts articulated in Nu Image, Inc. v. Does 1-3,932, this action must be

dismissed for Plaintiff having failed to sufficiently allege personal jurisdiction over the

Defendant.

**III.    Motion to Quash Subpoena or Enter a Protective Order Avoiding the Subpoena.**

**A.  Release of this Internet Subscriber's Name, Address, and Telephone Number, Email Address, and Media Access Control Number Would Unduly Prejudice Defendant.**

The Subpoena commands Verizon Internet Services to disclose to Malibu's counsel, Defendant's "name, address, and telephone number."  (Subpoena.)  Malibu's Complaint alleges that "[e]ach Doe Defendant is known to Plaintiff only by an IP address" (Compl. ¶ 9) and that "each of the Defendant's computers used their identified IP addresses to connect . . . in order to transmit a full copy, or a portion thereof, of a digital media file…" (Compl. ¶ 42).  If this premise were not true, the rest of Malibu's infringement allegations would absolutely fail.  However, the Court accepted this pleading as fact when granting Malibu's Discovery Motion, *ex parte*, to the detriment and prejudice of the Defendant, who should now be heard in defense of such allegation prior to allowing the Subpoena to go forward.

Malibu wrongfully equates the subscriber of the Internet service to the alleged infringer. In an Order entered by United States District Judge Samuel Conti on November 30, 2011, in the United States District Court, Northern District of California, the court held:

> [T]he ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes. For example, '[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works' (citing Third Degree Films v. Does 1-3,577, 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011)).  By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.

SBO Pictures, Inc. v. Does 1-3036, No. 11–4220 SC, 2011 WL 6002620, Order Granting in part Plaintiff's Ex Parte Application For Leave To Take Expedited Discovery, Severing Doe Defendants 2-3036 From Action, And Dismissing Claims Against Doe Defendants 2-3036, at *7-8 (N.D. Cal. Nov. 30, 2011) (citing Hard Drive Prods., Inc. v. Does 1-130, 2011 WL

5573960, at *2 (N.D. Cal. Nov. 16, 2011)).   In, <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2:11-cv-3995, Order and Report and Recommendation (E.D.N.Y. May 1, 2012) the court noted that:

> An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.

<u>Id.</u> at *6 (placing a district-wide moratorium on similar mass-joinder actions).   Many similar motions to quash have been granted.[4]   Accordingly, it would be proper for this Court to quash the Subpoena or enter a protective order avoiding it.

### B.  Motion for Protective Order and Opportunity for Defendant to be Heard in Defense of Disclosure.

The Court has broad discretion under Rule 26 to supervise, compel, and deny discovery. <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1306 (11th Cir. 2011); <u>see also</u> <u>Farnsworth v. Proctor & Gamble Co.</u>, 758 F. 2d 1545, 1548 (11th Cir. 1985).   Further, Rule 26(c) gives the district court discretionary power to fashion an appropriate protective order. <u>Farnsworth</u>, 758 F. 2d at 1548.   Specifically, this Court is authorized to issue such a protective order in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms . . . for the disclosure [and] limiting the scope of disclosure . . . to certain matters."   Fed. R. Civ. P. 26(c)(1)(B), (D).

---

[4]  <u>See e.g.</u>, <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2:11-cv-3995, Order and Report and Recommendation at * 8 (E.D.N.Y. May 1, 2012); <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2:11-cv-3995, Order and Report and Recommendation at * 8 (E.D.N.Y. May 1, 2012); <u>Patrick Collins v. Does 1-1219</u>, 2010 WL 5422569 (N.D. Cal. Dec. 28, 2010); <u>On the Cheap v. Does 1-5011</u>, No. CIO-4472BZ (N.D. Cal. Sep. 6, 2011); <u>Hard Drive Prods., Inc. v. Does 1-188</u>, 2011 WL 3740473, (N.D. Cal. Aug. 23, 2011).

Under the circumstances of this action, it would be reasonable for the Court to enter a protective order prohibiting the public disclosure of Defendant's identifying information until such time as the Plaintiff can further collaborate whether the Internet subscriber is the actual alleged infringer and until such time as the Defendant can be heard in defense of disclosure.  A complete protective order from the Court's *ex parte* ruling is needed to protect the Defendant from undue harm and embarrassment that could result from the release, if wrongfully named, inherent in a public accusation of copyright infringement of pornographic content.  Such would be highly damaging and stigmatizing to this Defendant, or call into question the Defendant's character, thereby endangering current and future employment.  In addition, the stigma and reputational damage would likely endure even after the Defendant was able to prove the falsity of Plaintiff's claims.  Thus, a complete protective order staying release of Defendant's personal information and an opportunity for Defendant to be heard in defense of disclosure is warranted.

### C.  Alternative Motion for Protective Order only Permitting Release Under Seal.

In the alternative, under the circumstances of this action it would be reasonable for the Court to enter a protective order prohibiting public disclosure of Defendant's identifying information, but allowing release only under seal.  In Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., the court noted that a Defendant may "move for a protective order if the subpoena seek[s] irrelevant information."  Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005).  There is no basis of relevancy upon which Defendant's identifying information should be released, except to assist the Plaintiff, and only the Plaintiff, to identify the alleged infringer it seeks.  Thus, release, if any, of the information Plaintiff requests by way of the Subpoena should be restricted to use by the Court and by

Plaintiff to perfect service of process, only.  In <u>Romero v. Drummond Co.</u>, the court articulated

the good cause standard that is necessary for determining if documents should be sealed:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

<u>Romero v. Drummond Co.</u>, 480 F.3d 1234, 1246 (11th Cir. 2007) (citations omitted).  Plaintiff

fails to demonstrate good cause for an untethered disclosure of Defendant's privileged

information, such that if release is to be made for the benefit of Plaintiff, it should be made <u>under</u>

<u>seal</u> for the benefit of Defendant, until such time as its relevancy is proved.

### IV.   A Special Appearance to Argue that the Subpoena Should be Quashed Because this Action must be Dismissed and/or Doe 24 be Severed.

#### A.  A Special Appearance does not Waive Defects in Personal Jurisdiction.

Without admitting that this Court has jurisdiction over this Defendant, which is in fact

denied, Doe 24, makes this special appearance solely to argue that a plain reading within the

four-corners of the Complaint reveals that this action should be dismissed or the defendants

severed for improper joinder, and for failure to state a cause of action upon which relief can be

granted, and therefore moves to quash or seek a protective order avoiding the Subpoena issued

under the Discovery Order.   A defendant may enter a special appearance to contest personal

jurisdiction without being subject to the personal jurisdiction of the court.  <u>Burger King Corp. v.</u>

<u>MacShara</u>, 724 F. 2d 1505, 1509 (11th Cir. 1984).   Local Rule 2.03(a) permits such special

appearance where it is expressly stated to be of such nature, as it is here.

#### B.  Plaintiff is Estopped from Arguing Movant does not have Standing to Dismiss.

An individual becomes a party when sufficiently identified in the complaint, whether by an actual or fictitious name.  For example, see sections 865.09(9)(a) and (b), Florida Statutes, which makes a clear distinction between plaintiffs and defendants.  Under subparagraph (a), any Florida business, its members, and those interested in doing such business "may not maintain any action, suit, or proceeding in any court of this state until [section 865.09] is complied with."  § 865.09(9)(a), Florida Statutes.  Whereas, on the contrary, the failure to register a fictitious name does not prevent the fictitiously named party "from defending any action, suit, or proceeding in any court of this state."  § 865.09(9)(b), Florida Statutes.  The Complaint that gives rise to this action sufficiently identifies Doe 11. (Compl., ¶¶ 6, 9.)   In reviewing a substantially similar complaint, the U.S. District Court for the Northern District of Illinois noted:

> The court notes that it cannot ignore the inconsistency of the plaintiff's position that the Doe … lacks standing to pursue a motion to [quash] because it has not been named or served, but at the same time refer throughout the … complaint to the [co-conspirator] who the plaintiff expressly identifies in the … complaint as the person with the Internet Protocol address [24.61.144.232]. … For all intents and purposes, the plaintiff has filed a complaint naming [Movant] IP Address [24.61.144.232] as a [co-conspirator]. The plaintiff's contention otherwise does not make it so.

Millennium TGA, Inc. v. Does 1-800, No. 10-cv-05603, 2011 U.S. Dist. LEXIS 94746, *3-4 (N.D. Ill. Aug. 24, 2011).

In this case, Doe 11's ISP, Verizon, provided a 30-day notice and opportunity for Doe 11 to be heard in defense of release of his/her identifying information under the court ordered subpoena ("Correspondence" (**Dkt. # 15-1 p. 2**)) and in protection of defendant's constitutional right to due process of law.  U.S. Const. amend. XIV.  Indeed, such notice and opportunity to be heard is not limited solely to the operation of a motion for protective order based on a showing of specific damage that could occur in the event of disclosure, as the plaintiff would have this Court construe a line of cases to hold.  "A protective order should be entered only when the movant

makes a particularized showing of 'good cause' and specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements and unsupported contentions do not suffice."  (R&R, p. 9.)  The line of cases relied upon by the Court does not contemplate the moving party to be fictitiously identified in the complaint as a defendant.  In distinct contradiction of the purpose for a protective order, this Doe defendant would have to disclose the very information for which protection is sought in order to meet the "specific showing" threshold.  The plaintiff and Verizon having informed Doe 11 of his/her opportunity to make a special appearance to defend against disclosure, sufficiently confers Doe 11 with standing to oppose the Subpoena and to move to dismiss the action.  Doe 11 is a de facto named party defendant.

Further, plaintiff seeks to impose joint and several liability upon Doe 11 and his/her alleged co-conspirators, and names Doe 11 as the person or entity associated with an IP listed on plaintiff's Exhibit "A."   However, a nonparty cannot be bound by a case in which he/she is not a party unless the party is represented in the action and the representation is full and adequate. Feen v. Ray, 109 Ill.2d 339, 348, 487 N.E.2d 619, 622 (1985); Hansberry v. Lee, 311 U.S. 32 (1940).  A failure of due process occurs in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it. Juris v. Inamed Corp., 2:97-cv-11441, at *30 (11th Cir. July 6, 2012).

To prevent Doe 11 from challenging the Subpoena begs the question as to whether the proceedings are truly adversarial or little more than an attempt to use expedited discovery to wrest quick settlements, regardless of innocence.  On the Cheap, LLC v. Does 1-5011, No. 10-

cv-04472, 2011 U.S. Dist. LEXIS 99831 (N.D. Cal. 2011). See also, VPR Internationale v. Does 1-1017, No. 11-cv-02068, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. 2011).

### C.  Motion to Dismiss the 81 Unregistered Works.

Malibu informs the Court that 81 of the 107 movies it sues upon were not registered with the United States Copyright Office at the time of filing the Complaint.  (Compl., ¶¶ 13-14; also see Exhibit B to Plaintiff's Complaint.)  In a recent decision also involving Malibu Media, LLC, the U.S. District Court for the Eastern District of New York provided the following analysis:

> In another case in this district, K-Beech v. Does 1-29, CV 11-3331, Magistrate Judge Boyle denied K-Beech the precise relief sought in the instant application based on a failure to allege that its copyright in the work in that case – *Virgins 4* – had been registered.  Judge Boyle found:
>
> Section 411(a) of the Copyright Act 'requires copyright holders to register their works before suing for copyright infringement.'  Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1241, (2010) (citing 17 U.S.C.A. § 411(a)).  While failure to register a work does not deprive a federal court of jurisdiction over an action for infringement, valid registration is an element of an infringement claim. Although the Second Circuit has not addressed this specific question, courts in both the Eastern District of New York and the Southern District of New York have held that submission of an application for copyright registration does not satisfy the registration precondition of § 411(a).  Order of 9/19/11 at 2-3 (additional quotations and citations omitted), DE [10].

In re BitTorrent Adult Film Copyright Infringement Cases, 2:11-cv-3995, Order and Report and Recommendation at *12 (E.D.N.Y. May 1, 2012).  "Judge Boyle denied the requested discovery, and K-Beech voluntarily dismissed the case.  (citation omitted)  I agree with Judge Boyle and find that K-Beech has not met its burden on this factor."  Id.  Likewise, this Court should dismiss Plaintiff's case, or, at a minimum, deny its causes of action as to 81 Unregistered Works.[5]

### D.  Motion to Dismiss and/or Sever: Defendants are not Properly Joined.

---

[5] Section 17 U.S.C. § 411(a) of the Copyright Act provides guidance on when a civil action for copyright infringement may stand; section 17 U.S.C. § 412(a) provides guidance on registration as prerequisite to certain remedies for copyright infringement.

Should this Court find that Plaintiff sufficiently pleads for Rule 20 joinder within the four corners of the Complaint, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21. "[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1323 (11th Cir. 2000).   "The Federal Rules, however, also recognize countervailing considerations to judicial economy." Id. at 1324.  "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  Numerous courts have found that alleged copyright infringement through the use of peer-to-peer networks is insufficient to sustain permissive joinder.[6]  Courts, however, have struggled to uniformly apply this case law to actions involving the use of BitTorrent technology.  Liberty Media Holdings, LLC v. Does 1- 38 et al., No. Civ. 1:11-cv-21567-KMM, Opinion and Order, at *3 (S.D. Fla. Nov. 1, 2011).

---

[6] See, e.g., Digital Sin, Inc. v. John Does 1-245, Case 1:11-cv-8170-CM, Order Severing John Does 2-245 (S.D.N.Y. May 15, 2012); K-Beech v. Does 1-37, Case 2:11-cv-03995-DRH-GRB, D.E. 619, Order and Report and Recommendation (S.D.N.Y. May 1, 2012); Hard Drive Productions, Inc. v. Does 1-90, Case 5:11-cv-03825-HRL, D.E. 18, Order Denying Application for Leave to Take Expedited Discovery and Severing Does 2-90 (N.D. Cal. Mar. 30, 2012) (severing defendants and denying discovery); Patrick Collins, Inc. v. John Does 1-23, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012); Liberty Media Holdings, LLC v. BitTorrent Swarm, 2011 U.S. Dist. LEXIS 126333, *7-9 (S.D. Fla. Nov. 1, 2011) (severing defendants sua sponte); Liberty Media Holdings, LLC v. BitTorrent Swarm, 2011 U.S. Dist. LEXIS 135847 (S.D. Fla. Nov. 1, 2011) (severing defendants sua sponte); AF Holdings, LLC v. Does 1-97, No. C 11-3067 CW, 2011 U.S. Dist. LEXIS 126225, at 7-8 (N.D. Cal. Nov. 1, 2011) (severing defendants 2-97); Hard Drive Productions, Inc. v. John Does 1-30, No. 2:11ev345, 2011 U.S. Dist. LEXIS, at *6- 10 (N.D. Pa. Nov. 1, 2011) (severing defendants 2-30); Hard Drive Prods., Inc. v. Does 1-188, 2011 WL 3740473, at *7-9 (N.D. Cal. Aug. 23, 2011) (analyzing pre-BitTorrent P2P case law); BMG Music v. Does 1-203, No. Civ. A. 04-650, 2004 WL 953888, at 1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); LaFace Records, LLC v. Does 1-38, No. 5:07-CV- 298-BR, 2008 WL 544992 (E.D. N.C. Feb. 27, 2008) (severed lawsuit against 38 defendants); BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (court sua sponte severed defendants).

Consequently, courts are split as to whether joinder under Rule 20 is appropriate in actions alleging copyright infringement against a BitTorrent swarm. Id. (citing Hard Drive Prods., Inc. v. Does 1-55, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (finding joinder appropriate); Donkeyball Movie, LLC v. Does 1-171, 2011 WL 1807452, at *4 (D.D.C. May 12, 2011) (same). But see Hard Drive Prods., Inc. v. Does 1-30, 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011) (finding joinder inappropriate); Hard Drive Prods., Inc. v. Does 1-188, 2011 WL 3740473, at *7-15 (same).

In Hard Drive Prods., Inc. v. Does 1-188, in support of the court's decision finding misjoinder, the court held that:

> Does 1-188 did not participate in the same transaction or occurrence, or the same series of transactions or occurrences. . . . Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by **unknown hundreds or thousands of individuals across the country or across the world.**

Id. at *13 (emphasis added). The activity of the defendants occurred on "different days and times over a two-week period." Id. This supported the court's finding that though the defendants may have participated in the same swarm, there was "no evidence to suggest that each of the [defendants] 'acted in concert' with all of the others." Id.

In Digital Sin, Inc. v. John Does 1-245, the court noted that " . . . the complaint alleges that separate defendants shared access to a file containing a pornographic film in separate and isolated incidents over the course of 59 days." Digital Sin, Inc. v. John Does 1-245, Case 1:11-cv-8170-CM, Order Severing John Does 2-245, at *3 (S.D.N.Y. May 15, 2012). "In other words, what we have here is 245 separate and discrete transactions in which 245 individuals used the same method to access a file via the Internet – no concerted action whatever, and no series of

related occurrences." Id.  "Indeed, it is no accident that Plaintiff has not sought to bring this lawsuit as a class action, or to have a class of defendants certified – the Rule 23 requirements for certification could not possibly be met." Id. at *4.

In the present case, the alleged BitTorrent activity complained of occurred over an alleged period of nearly two months (03/04/12 to 05/02/12).  Plaintiff's Compl., Ex. "A" **(Dkt. # 1-1).**  This fact alone negates the inference that Doe 24 acted in concert with the other defendants.  BitTorrent file sharing over an extended period of time fails to meet the same "transaction, occurrence, or series of transactions or occurrences" requirement under Rule 20. Liberty Media Holdings, LLC v. Does 1-38 et al., No. Civ. 1:11-cv-21567-KMM, Opinion and Order (S.D. Fla. Nov. 1, 2011).  Such an extended time period further negates the inference that Defendant committed infringement "willfully".  (Compl., ¶¶ 52, 62.)

Finally, permissive joinder of defendants would likely prejudice Defendant, Doe 24, due to the numerous logistical burdens that would arise.  See Hard Drive Prods., Inc., v. Does 1-188, 809 F.Supp.2d 1150, 1164 (N.D. Cal. 2011).  In Hard Drive Productions, Judge Spano (citing Bridgeport Music, Inc. v. 11C Music, 202 F.R.D. 229, 232-33 (M.D. Tenn. 2001)) correctly identified that:

> The joinder would result in numerous hurdles that would prejudice the defendants.  For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings - a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers.  Each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing *pro se* and may not be e-filers.  Each defendant would have the right to be at each other defendant's deposition—creating a thoroughly unmanageable situation.  The courtroom proceedings would be unworkable—with each of the [defendants] having the opportunity to be present and address the court at each case management conference or other event.  Finally, each defendant's defense would, in effect, require a mini-trial.  These burdens completely defeat any supposed benefit from the joinder of all Does in

this case, and would substantially prejudice defendants and the administration of justice.

Hard Drive Prods., Inc., 809 F.Supp.2d at 1164.  Accordingly, permissive joinder of the

defendants in this action does not satisfy Rule 20(a), such that the action should be dismissed or

the defendants should be severed under Rule 21 and the Subpoena issued thereunder, quashed.

In re BitTorrent Adult Film Copyright Infringement Cases, 2:11-cv-3995, Order and Report and

Recommendation at *18-21 (E.D.N.Y. May 1, 2012).

**E.  Failure to State a Cause of Action upon Which Relief can be Granted:  Joinder Based on the Sharing of the Exact same Torrent file Cannot Logically Render Entitlement to 107 Claims Damages, per Defendant, per Registered Work.**

Malibu requests damages "per Defendant, per registered Work infringed."  (Compl., p. 9,

Wherefore Clause, ¶ D; p. 11, Wherefore Clause, ¶ E).   However, Plaintiff relies on a one,

common file relationship to justify joining these unknown defendants.   Under the "Joinder"

section of its Complaint, Plaintiff alleges that "each of the Defendants was part of a series of

transactions, involving **the exact same torrent file** . . . acting in concert with each other . . .

[such that] indeed, the claims against each of the Defendants are identical . . . ."  (Compl., ¶ 12

(emphasis added.))  While, on the contrary, Malibu seeks individual damages for each of the 107

films alleged to be found within **the exact same torrent file.**   (Id.   (emphasis added.))  This is

the so-called "siterip."  (Compl., ¶ 2.)   This sword and shield approach cannot logically stand.

Further, to the extent that a single file containing multiple works may be deemed a compilation,

"for the purposes of [section 504] all the parts of a compilation or derivative work constitute one

work."  17 U.S.C. § 504(c)(1).   Thus, dismissal is warranted for failure to state a cause of action.

**F.  Failure to State a Cause of Action: Failure to Sufficiently Plead a Cause of Action for Copyright Infringement.**

In its Complaint, Malibu alleges that "[e]ach Defendant had copied **a piece** of Plaintiff's copyrighted Works identified by the Unique Hash Number . . . ." (Compl. ¶ 41(a)) (emphasis added.) "[E]ach of the Defendant's computers used their identified IP addresses . . . to **transmit a full copy, or a portion thereof,** of a digital media file identified by the Unique Hash Number." (Compl. ¶ 42) (emphasis added.)   "Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie." (Compl. ¶ 37.)

The issue arises of "whether transmitting pieces of a copyrighted work using BitTorrent, without transmitting all of the pieces, constitutes copyright infringement." <u>Malibu Media, LLC v. John Does 1-10</u>, 2:12-cv-3623, Order, at *5 (C.D. Cal. June 27, 2012).  In <u>Malibu Media, LLC v. John Does 1-10</u>, U.S. District Judge Otis D. Wright, II opined in his Order:

> But Malibu does not show which Doe Defendants transmitted a full copy, and which transmitted just one piece of the file.  As noted above, individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file.  Nor do the individual file pieces resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by BitTorrent, the resulting pieces are not playable 10-second clips of the movie.  If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work.  Without the remaining pieces, this Doe Defendant cannot do anything with this scrap of data.

<u>Id.</u>

Accordingly, this Court must consider whether Malibu has properly plead for copyright infringement, and whether the allegations that a defendant transmitted a piece of a digital media file, which is unreadable and worthless, constitutes a claim for copyright infringement.

### G. Failure to State a Cause of Action:  Non-Cumulative Joint and Several Liability Cannot Stand; Plaintiff Cannot have it both ways.

Malibu seeks damages above that which would make it whole. This is in contradiction to the joint and several concerted action argument Malibu makes in support of joinder of these unknown defendants. Malibu pleads, "[p]ursuant to Fed. R. Civ. P. 20(1)(2), each of the Defendants was properly joined because . . . each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants . . . ." (Compl., ¶ 12(a); p. 11, Wherefore Clause, ¶ D.) Then, Malibu requests damages "per defendant, per registered Work infringed." (Compl., p. 9, Wherefore Clause, ¶ D; p. 11, Wherefore Clause, ¶ E).

Should the Court construe Plaintiff's cause of action to be based on the same transaction or occurrence and/or joint and several liability, then Plaintiff must disclose all individual settlements to the non-settled swarm members. In re Chene, 236 B.R. 69, 73 (Bankr. M.D. Fla., 1999) ("Although each responsible person is [joint and severally] liable for the entire amount of the unpaid withholding tax, the IRS does not recover more than 100 percent of the underlying tax."). Malibu cannot have it both ways: Plaintiff cannot plead commonality in the same transaction or occurrence or joint and several liability, and then seek non-cumulative individual damages per defendant.

Section 504 provides, with regard to actual damages, that "in establishing the infringer's profits, the copyright owner is required to present proof only of the **infringer's gross revenue**, and the infringer is required to prove his or her deductible expenses . . . ." 17 U.S.C. § 504(b) (emphasis added). And, Section 504 provides, with regard to statutory damages that "**with respect to any one work**, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1) (emphasis added).

Under joint and several liability, damages are limited to a single amount calculated to make the Plaintiff whole, or a single statutory limit, with each individual defendant being responsible for an undivided portion of the whole, subject to division based on prior or like contributions. U.S. v. Page, 69 F.3d 482, 494 (11th Cir. 1995).  "Because of the joint and several nature of the restitution imposed by the district court, the district court could not at the same time also provide that the monies paid by one defendant could not be credited toward the restitution obligations of the other defendants."  Id.  Thus, it is logically clear that Plaintiff's action for joint and several damages requires disclosure to each defendant of all amounts received thus far from other defendants who have contributed to the whole.  Anything short of full disclosure could result in duplicate recovery, absent setoff.

Malibu seeks damages above that which would make it whole.  In re Chene, 236 B.R. 69, 73 (Bankr. M.D. Fla., 1999) ("Although each responsible person is [joint and severally] liable for the entire amount of the unpaid withholding tax, the IRS does not recover more than 100 percent of the underlying tax.")  Accordingly, Plaintiff may only seek damages per swarm, not per defendant.  Moreover, it is not out of the realm of possibilities that Malibu may have already been made whole by alleged members of this swarm prior to bringing this action.  It is well-known that Malibu has filed similar lawsuits across the nation.  Upon information and belief, Plaintiff has already settled all or a portion of the claims with other "peers" in the same "swarm" it sues for here.

As a result of pre-suit and post-suit settlements with multiple parties ("across the country or across the world"[7]) Plaintiff must disclose to the Court and to each purported defendant all compensation it has received as a result of the alleged download of an alleged single file by the

---

[7] Hard Drive Prods., Inc. v. Does 1-188, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011).

multiple parties it now sues upon or, at a minimum, plead setoff.  Plaintiff has done neither.  The Eleventh Circuit Court of Appeals, in U.S. v. Huckabee Auto Co., ruled that "it is the policy of the IRS to collect the delinquent tax only once."  United States v. Huckabee Auto Co., 783 F. 2d 1546, 1548 (11th Cir. 1986).  "Double recovery by the government is not necessary to fulfill § 6672's primary purpose — protection of government revenues."  Id.  (quoting Brown v. United States, 591 F. 2d 1136, 1143 (5th Cir. 1979)).

To be clear, Defendant is not at this time raising the affirmative defense of election of remedies, which prevents a party from obtaining double redress for a single wrong.  The doctrine "refers to situations where an individual pursues **remedies** that are legally or factually inconsistent." Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974).  (emphasis added.) Rather, the argument is raised to illustrate that joinder (a procedure) is inconsistent with its per-defendant damage (a remedy) claim.  In other words, each of Plaintiff's alternative remedies defeats its argument for joinder.

The 11th Circuit has held that ". . . where a party injured by a breach definitely manifests a choice of a remedy that is actually available to him, in the place of some other alternative remedy, such a manifestation will bar an action for the latter remedy, provided that the party against whom the remedy is asked made a substantial change of position in reliance on the manifestation of intention before notice of its retraction.  This makes the conclusiveness of an 'election' depend upon the existence of facts sufficient to create an 'estoppel.'" Dunkin' Donuts of America, Inc. v. Minerva, Inc., 956 F. 2d 1566, 1577 (11th Cir. 1992).  Here, the Plaintiff has already made an election of remedies to accept undisclosed settlements severally.

In this case, the swarm can be much larger than the number of defendant sued in this action, indeed the single alleged swarm can include defendants across the nation and the world.

It may be, unbeknownst to the Court, that the Plaintiff already received maximum statutory damages from the same alleged transaction or occurrence such that Plaintiff has already been made whole.  Nothing short of full disclosure and setoff would allow Doe 24 to be aware of Plaintiff 's entitlement, if any, to the damages it claims to remain joint and severally outstanding and arising from the same transaction and occurrence theory it relies upon for joinder in this action.  It would be an injustice to allow Plaintiff 's claim for joint and several liability to stand where Plaintiff has already made an election of remedies to accept undisclosed settlements severally.  U.S. v. Eli R. Price, Executor of Joseph Archer, 50 U.S. 83, 94 (1850) ("But having once made his election and obtained a joint judgment, his bond is merged in the judgment, *quia transit in rem judicatam*.  It is essential to the idea of election that a party cannot have both.")

Malibu cannot have it both ways.  Thus, if the Court were to find that Plaintiff sufficiently implied commonality in the same transaction or occurrence or joint and several liability (despite the omission of any such language), by pleading same swarm/hash, the remedy[8] is inconsistent with the cause of action, fails to state a cause of action, and must be dismissed because the complaint seeks non-cumulative statutory damages per defendant.

### V.  Conclusion.

Defendant, John Doe 24, prays for an order against plaintiff, MALIBU MEDIA, LLC, that:

1. quashes the Subpoena served upon Verizon Internet Services, by MALIBU MEDIA, LLC due to Plaintiff's failure to sufficiently plead for personal jurisdiction;

2. in the alternative, grants a protective order against the release of Defendant's information <u>or</u> restricts that any release be made only under seal;

---

[8] Again, this is not an election of remedies argument but stated to show that joinder is improper when the remedy sought is several.

3. dismisses or severs this action for improper joinder;

4. dismisses or severs this action for improperly seeking non-cumulative damages per defendant, rather than per swarm;

5. dismisses Plaintiff's claim for failure to state a cause of action upon which relief can be granted;

6. dismisses Plaintiff's claim for relief against all 81 Unregistered Works;

7. awards Defendant his/her reasonable attorney's fees and costs incurred for having to bring forth these motions;

8. orders that plaintiff, MALIBU MEDIA, LLC, take nothing by way of its Complaint;

9. orders that Defendant, John Doe 24, go hence without day; and

10. grants such other relief this Honorable Court deems equitable and just.

Respectfully submitted by:

**WILLIAM R. WOHLSIFER, PA**

By: /s/ William R. Wohlsifer
    William R. Wohlsifer, Esquire
    Fla. Bar No:  86827
    1100 E Park Ave Ste B
    Tallahassee, Florida 32301
    Tel:  (850) 219-8888
    Fax: (866) 829-8174
    E-Mail:  william@wohlsifer.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

I hereby certify that counsel for the movant has conferred with plaintiff's counsel in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

By: /s/ William R. Wohlsifer
    William R. Wohlsifer, Esquire
    Fla. Bar No:  86827

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all parties receiving electronic notification via the Court's CM/ECF system as of July 13, 2012.

I also certify that on July 13, 2012, a copy of the foregoing was sent via facsimile to: Verizon Legal Compliance, Custodian of Records, P.O. Box 1001, San Angelo, TX 76902 (Fax: 325-434-3401).

By: /s/ William R. Wohlsifer
      William R. Wohlsifer, Esquire
      Fla. Bar No:  86827