## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

MALIBU MEDIA, LLC,

      Plaintiff,

      v.                           Case No.: 2:12-cv-266-JES-DNF

JOHN DOES 1 - 25

      Defendants.

_____/

### DOE DEFENDANT 6'S MOTION TO SEVER DEFENDANTS AND QUASH SUBPOENA OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER, AND INCORPORATED MEMORANDUM OF LAW

Doe Defendant 6 ("Defendant 6") respectfully moves this Court, pursuant to Rules 12, 20, 21 and 26(c), Federal Rules of Civil Procedure, to enter an Order severing Defendant 6 and quashing Plaintiff Malibu Media, LLC's ("Plaintiff") subpoena of Comcast Cable or, alternatively, entering a protective order against enforcement of the subpoena of Comcast Cable as to Defendant 6, and in support thereof submits this Incorporated Memorandum of Law.  As will be more fully detailed below, this Motion should be granted because:

1.      Joinder of Defendant 6 with the other 24 Doe Defendants is not proper in this case under Rule 20, Federal Rules of Civil Procedure;

2.      Pursuant to Rule 21, Federal Rules of Civil Procedure, this Court should sever the case against Defendant 6 from the other 24 Doe Defendants and dismiss the action against Doe Defendants 2 through 25; and

3.      Plaintiff has not pled sufficient facts to support personal jurisdiction over Defendant 6 or to support enforcement of the subpoena to Comcast Cable as to Defendant 6.

## INTRODUCTION

Plaintiff filed this action against 25 Doe Defendants alleging copyright infringement of pornographic movies. A search on PACER reveals that Plaintiff has filed two hundred and thirty four (234) such cases in federal courts from February 2012 through July 2012, against thousands of Doe Defendants. In the Middle District alone, Plaintiff has filed twenty (20) cases. This behavior has earned entities that employ such tactics the label "copyright trolls."[1] Copyright trolls pay a single filing fee to bring copyright infringement claims related to pornographic movies against mass groups of "Doe" defendants joined in a single complaint in order to gain access to the identify of each "John Doe" and force favorable settlements by leveraging defendants' aversion to being publicly linked with pornography. Malibu Media's tactics were clear to the Central District of California, which recently concluded:

> The Court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate a movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these case reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. **The Court will not idly watch what is essentially an extortion scheme,** for a case that plaintiff has no intention of bringing to trial.

Malibu Media, LLC v. John Does 1 through 10, No. 2:12-cv-3623-ODW(PJWx), 2012 U.S. Dist. LEXIS 89286, at *8-9 (C.D. Cal. June 27, 2012) (emphasis added). See also Malibu Media, LLC

---

[1] See e.g., "Copyright Trolls," Electronic Frontier Foundation, https://www.eff.org/issues/copyright-trolls.

v. Does 1-5, No. 12 Civ. 2950(JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) (stating

that the court "shares the growing concern about unscrupulous tactics used by certain plaintiffs,

particularly in the adult films industry, to shake down the owners of specific IP addresses from

which copyrighted adult films were allegedly downloaded."); Malibu Media, LLC v. John Does

1-26, No. 2:12-cv-00147-JS-GRB, at 2 (E.D.N.Y. May 1, 2012) (noting the "abusive litigation

tactics" by Plaintiff in its "nationwide blizzard of civil actions.").[2]

By joining dozens of Doe defendants in one complaint and paying a single filing fee,

copyright trolls attempt to get access to dozens of defendants for a fraction of the cost of filing

separate lawsuits.  Obtaining the identity of the defendants is the critical juncture of the case.

Once the copyright troll has the defendants' identities, it can contact the Defendants directly to

leverage (some would say "extort") settlement.

While some copyright trolls have had some success, more and more  judges are now

voicing concerns about these attempts to stretch the boundaries and concepts of joinder and

personal jurisdiction.  As  the Northern District of Illinois  recently stated in dismissing a case:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something
> that this court will assume to be the case, given the Complaint's allegations that
> so state), each of those infringements was separate and apart from the others.  No
> predicate has been shown for thus combining 300 separate actions on the cheap –
> if CP had sued the 300 claimed infringers separately for their discrete
> infringements, the filing fees alone would have aggregated $105,000 rather than
> $350.

CP Productions, Inc. v. Does 1-300, No. 10 C 6255, 2011 WL 737761 at *1 (N.D. Ill. February

24, 2011).  Later, the court added:

> This Court has received still another motion by a "Doe" defendant to quash a
> subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP")
> against no fewer than 300 unidentified "Doe" defendants . . . .  This Court's

---

[2] Plaintiff's Notice of Pendency of Related Actions listed only actions in the Middle District of Florida and only a portion of those actions. Contemporaneous with this filing, Defendant 6 has filed a Notice of Pendency of Related Actions listing related actions in courts around the country.

February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. . . . [At the next hearing] Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

CP Productions, Inc. v. Does 1-300, No. 10 C 6255, Statement of March 2, 2011 (available at

http://law.justia.com/cases/federal/district-courts/illinois/ilndce/1:2010cv06255/248010/33/).

Another federal court in Illinois denied a motion for expedited discovery and stated:

"[t]he court has no jurisdiction over any of the Does at this time; the imprimatur of this court will

not be used to advance a 'fishing expedition by means of a perversion of the purpose and intent'

of class actions." VPR Internationale vs. Does 1-1017, No. 11-2068 (C.D. Ill. Apr. 29, 2011)

(http://docs.justia.com/cases/federal/district-courts/illinois/ilcdce/2:2011cv02068/51489/15/)

(quoting the court's earlier order denying expedited discovery).

One federal court in Virginia even scheduled a Rule 11 hearing regarding the tactics of

plaintiff's counsel. The Raw Films court stated:

The Court also finds that the plaintiff should be required to show cause why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure. The Court currently has three similar cases before it, all brought by the same attorney . . . . In all three, the plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation . . . .

The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.

> The plaintiffs' conduct in these cases indicates an improper purpose for the suits. In addition, the joinder of unrelated defendants does not seem to be warranted by existing law or a non-frivolous extension of existing law.

Raw Films, Ltd., v. John Does 1-32, No. 3:11cv532-JAG, 2011 WL 6182025 at *2-3 (E.D. Va. Oct. 5, 2011).

## FACTS

Plaintiff filed this action against 25 unknown Doe Defendants because Plaintiff only has a list of Internet Protocol ("IP") addresses, not the names of potential defendants. See Complaint at ¶ 9. An IP address identifies an internet connection; it does not identify a person. There is no way to be certain who may have actually used the IP address to access the material in question. An IP address cannot identify who was using the internet connection at any point in time. It does not distinguish between a parent and a minor in the same home; between roommates; or between residents and guests. Furthermore, anyone within range of an unsecured (or, in some cases, a secured) wireless internet connection can use the wireless router's IP address, including neighbors or passersby. In re Bittorrent Adult Film Copyright Infringement Cases, (Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB), Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB), Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB): **Order and Report and Recommendation,** (E.D.N.Y. May 1, 2012) ( citing, U.S. v. Latham, 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007). The IP address does not identify what device was connected to the internet. It does not distinguish between a desktop, laptop, iPad, iPhone, Blackberry, or any other device capable of an internet connection.

To support joinder, Plaintiff alleges that each of the Doe Defendants used BitTorrent to infringe Plaintiff's copyrighted works, pornographic movies, and was "part of a series of actions,

involving the exact same torrent file containing pieces of Plaintiff's copyrighted works.[3]  See Complaint at ¶ 12.  A torrent is a type of peer to peer ("P2P") network whereby one file-provider shares a file ("seed") with a torrent network.  Then other users ("peers") within the network connect to the seed file for downloading.  As additional peers request the same file, they become part of the same network.  See Complaint at ¶¶ 16-17.  The peers both download and upload from one another and this system of multiple pieces of data coming from peers is called a "swarm."  See Complaint at ¶ 17.  While exchanging data with peers may appear complicated, the torrent software that handles this operation can be downloaded for free and users may search for files about as easily as running a Google search.

## MEMORANDUM OF LAW

### I.  DEFENDANT 6 SHOULD BE SEVERED FOR MISJOINDER

Defendant 6 has been improperly joined and should be severed from this action.  A plaintiff may join defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

> and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Plaintiff must satisfy *both* prongs of Rule 20(a)(2).  In this case, Plaintiff cannot satisfy either prong.  As a result of this improper joinder, the Court should sever the claims against each Doe Defendant pursuant to its authority under Rule 21, Federal Rules of Civil Procedure.  Alternatively, even if Plaintiff can satisfy the technical requirements of Rule

---

[3] But this allegation is weak, at best, because, as noted above, the owner of the IP address may not be the alleged infringer and may not even know the alleged infringer using the Defendant's IP address.

20(a)(2), the Court should sever Doe Defendants 2 through 25 pursuant to its discretionary authority under Rule 20(b), Federal Rules of Civil Procedure.

## A. Plaintiff Cannot Show that Doe Defendants Acted In Concert

Plaintiff alleges that each Defendant "act[ed] in concert with each other" by accessing the same torrent file.[4] See Complaint at ¶ 12. Prior to torrent technology, courts had reached a consensus that users connected by a P2P network could not be joined as defendants. See Hard Drive Prods. Inc v. Does 1-888, No. C-11-01566JCS, 2011 WL 3740473, at *7-9 (N.D. Cal. Aug. 23, 2011) (citing Laface Records, LLC. v. Does 1–38, No. 5:07-CV-298-BR, 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008); Interscope Records v. Does 1-25, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, at *2, *19 (M.D. Fla. Apr. 1, 2004); Elektra Entertainment Group, Inc. v. Does 1–9, No. 04 Civ. 2289(RWS), 2004 WL 2095581, at *1 (S.D.N.Y. Sept. 8, 2004); Fonovisa, Inc. v. Does 1–9, No. 07-1515, 2008 WL 919701 (W.D. Pa. Apr. 3, 2008)). Plaintiffs in those P2P cases could not join the defendants because they could not show that "defendants . . . acted in concert." Fonovisa, Inc., 2008 WL 919701 at *5. The courts concluded that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." Laface Records, LLC., 2008 WL 544992, at *1. With the advent of torrent technology, plaintiffs have been able to persuade some courts that torrent technology changes the joinder analysis. But, as will be demonstrated below, torrent technology does not resolve the inherent problems that prevented joinder of defendants who allegedly use P2P technology in those older cases, and accordingly, the Doe Defendants should not be joined in this case.

---

[4] Again, since the owner of the IP address may not be the infringer, any allegation that each of the IP address owners "acted in concert" to infringe Plaintiff's copyright is tenuous.

The 25 Doe Defendants in this case were not involved in "the same transaction, occurrence, or series of transactions or occurrences" as required for joinder under Rule 20 because it is implausible that they acted in concert with one another. As the Complaint reveals, the 25 Doe Defendants each interacted with the "swarm" at different times over nearly two months, between March 4, 2012 and May 2, 2012. See Complaint, Exhibit A. Without any allegation that each of the defendants accessed the swarm at the same time, or nearly the same time, it is simply implausible, if not impossible, that the 25 Doe Defendants each acted in concert with all of the others as alleged. As stated in Hard Drive Productions:

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses 'acted in concert' with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case . . . . **[I]t is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole.**

Hard Drive Prods., 2011 WL 3740473 at *13 (emphasis added). Similarly, as Judge Moore recently stated:

> Under the **BitTorrent** Protocol, it is not necessary that each of the Does 1–188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does 1–188. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm. The bare fact that a Doe clicked on a command to participate in the **BitTorrent** Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

Judge Moore went on in that case to conclude that:

> A close examination of Defendants' activity reveals that Defendants, subject to one exception, used BitTorrent on different days and at different times over a two-month period. Two Defendants did use BitTorrent at the same time, but due to the decentralized operation of BitTorrent, this fact alone does not imply that Defendants "participated in or contributed to the downloading of each other's

copies of the work at issue." Merely participating in a BitTorrent swarm does not equate to participating in the same "transaction, occurrence, or series of transactions or occurrences.

Liberty Media Holdings, LLC v. BitTorrent Swarm, et al., 277 F.R.D. 669, 671-672 (S.D. Fla. 2011) (severing all but one defendant) (citations omitted). Furthermore, as the Central District of California recently observed:

> But Malibu does not show which Doe Defendants transmitted a full copy, and which transmitted just one piece of the file. As noted above, individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file. Nor do the individual file pieces resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by BitTorrent, the resulting pieces are not playable 10-second clips of the movie. If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. Without the remaining pieces, this Doe Defendant cannot do anything with this scrap of data. At this stage, the Court declines to opine whether transmitting pieces of acopyrighted work using BitTorrent, without transmitting all of the pieces, constitutes copyright infringement. But the Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

Malibu Media, LLC v. John Does 1 through 10, 2012 U.S. Dist. LEXIS 89286, at *5. The Court went on to find, based on these facts, that joinder was inappropriate because, "a downloader may log off at any time, including before receiving all the pieces of a copyrighted work." Id. at *8.

The same is true here. There is no allegation that any of the defendants copied the entirety of any of the copyrighted works. Each of the defendants is alleged to have copied only a piece of the copyrighted works. Complaint at ¶ 41(A). And, just like in Hard Drive Productions, the defendants each are alleged to have accessed the swarm at different time. But the time span in this case - nearly two months - is even longer than in the period in Hard Drive Productions, a case in which the defendants were severed, thus it is even less plausible that each of the 25 Doe Defendants here acted with each of the others as part of the same series of transactions.

In <u>Diabolic Video</u>, the plaintiff claimed that the defendants "acted in cooperation with one another 'by agreeing to provide, and actually providing on a P2P network, an infringing reproduction' of the copyrighted video." See <u>Diabolic Video Productions v. Does 1–2,099</u>, No. 10-CD-5865-PSG, 2011 WL 3100404 at *3 (N.D. Cal. May 31, 2011). The plaintiff in that case, just as Plaintiff has done here, relied on the mere alleged use of common hash tags joined in a swarm and argued that this satisfied the requirements of Rule 20 joinder under the Federal Rules of Civil Procedure. The <u>Diabolic Video</u> Court rejected that theory and held that:

> This court and others, however, have repeatedly held that the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20. Apart from its lone allegation that Defendants all used the same P2P network to reproduce and distribute [Plaintiff's] copyrighted work, [Plaintiff] offers no allegations whatsoever to support its theory of a single or closely-related transactional theory."

<u>Id.</u>

Not only did each of the 25 Doe Defendants in this case interact with the swarm at different times over nearly two months rather than directly with one another, but to the extent that any Doe Defendants interacted with any other peers in the swarm, they may have only interacted with one and not any of the others.[5] And it is equally plausible that any one of the defendants interacted with one or more of potentially thousands of *other* peers who are *not* defendants in this case. The 25 Doe Defendants here represent a small geographic subset of the worldwide peers on the swarm. The user does not choose his peers in a swarm and a user may just as likely be matched to a peer around the world as matched to a peer around the block. Plaintiff has grouped the 25 Doe Defendants arbitrarily in an attempt to satisfy jurisdictional requirements of litigation, not because these particular 25 defendants are any more or less likely

---

[5] It is noteworthy that, as revealed in Exhibit C to the Complaint, not every defendant is alleged to have infringed each of the 26 movies listed.

to have interacted with one another than any other peers in the swarm. As the Hard Drive

Productions Court aptly explained:

> Any "pieces" of the work copied or uploaded by any individual Doe may have
> gone to any other Doe *or to any of the potentially thousands who participated in a*
> *given swarm.* The bare fact that a Doe clicked on a command to participate in the
> BitTorrent Protocol does not mean that they were part of the downloading by
> unknown hundreds or thousands of individuals across the country or across the
> world.

Hard Drive Prods, 2011 WL 3740473 at *13 (emphasis in original). Similarly, the MCGIP

court denied joinder where the plaintiff could not specifically show concerted action among Doe

Defendants:

> [E]ven assuming that the Doe defendants in this case entered the same swarm and
> downloaded the same seed file, MCGIP has failed to show that any of the 149
> Doe defendants actually exchanged any piece of the seed file with one another.
> MCGIP's amended complaint attempts to address this issue by alleging that "[t]he
> Defendants were collectively engaged in the conspiracy even if they were not
> engaged in the swarm contemporaneously because they all took concerted action
> that contributed to the chain of data distribution." Here, the alleged "chain of data
> distribution" spans 149 defendants, 14 different ISPs, and 36 separate days
> between March 28, 2011 and May 11, 2011. . . . Joinder is inappropriate.

MCGIP, LLC v. Does 1-149, C 11-02331 LB, 2011 WL 4352110 at * 3 (N.D. Cal. Sept. 16,

2011) (internal citations omitted). Because it is implausible that the 25 Doe Defendants in this

case worked in concert, due to the fact that they accessed the swarm at far different times over

nearly two months and may not have interacted with one another at all, the Doe Defendants

cannot be property joined.

The Court should not accept as true Plaintiff's conclusory allegation that "each Defendant

was part of the same series of transactions." Complaint at ¶ 41(B). "The tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). Because the statement that each

of the Doe Defendants "was part of the same series of transactions" is a pure legal conclusion,

the Court does not have to accept the statement as true. Plaintiff's allegation that each Defendant "was part of the same series of transactions" is undermined by the other facts pled; namely that different defendants interacted with the swarm at different times over the course of almost two months. There was no technical need for any Doe Defendant in this case to cooperate with any other Doe Defendant in this case, much less each other Doe Defendant. Because Plaintiff's allegation is a mere legal conclusion, unsupported by the facts, joinder is not appropriate and the Doe Defendants 2-25 should be severed.

## B. The Court has Discretion to Deny Permissive Joinder

"Since joinder is permissive in character, there is 'no requirement that the parties must be joined,' particularly where joinder would 'confuse and complicate the issues for all parties involved' rather than make the resolution of the case more efficient." On the Cheap, LLC, v. Does 1-5011, No. C10-4472 BZ, 2011 WL 4018258 at *2 (N.D. Cal. Sept. 6, 2011) (internal citations omitted). Additionally, "the Court is required to 'examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side.'" Id. When evaluating fundamental fairness, courts may consider factors such as "the motives of the party seeking joinder." Digital Sin, Inc., v. Does 1-5698, No. C 11-04397 LB, 2011 WL 5362068, at *3 (N.D. Cal. Nov. 4, 2011) (citing Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). As will be shown below, in this case, joinder would not make the resolution of the case more efficient and it would unfairly and unreasonably prejudice the Doe Defendants by denying them Due Process.

Plaintiff admits that it has only IP addresses of the Doe Defendants. However, IP addresses only identify an internet connection, not a person. As one court noted, "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her

12

minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's

works. John Does 3 through 203 could be thieves, just as Plaintiffs believe." Third Degree Films

v. Does 1–3577, No. C 11–02768 LB, 2011 WL 5374569, at *4 (N.D. Cal. Nov. 4, 2011). "By

defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of

the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after

discovery has the potential to draw numerous innocent internet users into the litigation, placing a

burden upon them that weighs against allowing the discovery as designed.'" SBO Pictures, Inc.

v. Does 1-3036, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011) (internal

citations omitted).

  Not only will joining so many Doe Defendants together put a heavy burden on innocent

defendants, but it would undermine, not promote, trial efficiency. Even though each of the Doe

Defendant's behavior might be facially similar, they would each likely present different defenses

which would be potentially confusing to a jury.

  As Judge Moore stated in Liberty Media Holdings:

> This Court finds it appropriate to exercise its discretion to sever and dismiss all
> but [one defendant] from the current action. Even if joinder were appropriate,
> severance is necessary to avoid causing prejudice and unfairness to Defendants,
> and to expedite and economize the litigation. . . . Moreover, "permitting joinder
> would force the Court to address the unique defenses that are likely to be
> advanced by each individual Defendant, creating scores of mini-trials involving
> different evidence and testimony."

Liberty Media Holdings, LLC, 277 F.R.D. at 672 (quoting Hard Drive Prods.) (severing

seventeen of eighteen defendants). See also BMG Music v. Does 1–203, No. Civ.A. 04–650,

2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004); On the Cheap, LLC, 2011 WL 4018258 at *2;

Hard Drive Prods, 2011 WL 3740473 at *14-15 ("[T]he Court also notes that . . . there are listed

at least thirteen different internet service providers associated with Doe Defendants, which could

also give rise to different ISP-specific defenses, evidence, and testimony."); Fonovisa, Inc., 2008 WL 919701 at *5 ("[S]ince the claims against the different Defendants most likely will involve separate issues of fact and separate witnesses, different evidence, and different legal theories and defenses, which could lead to jury confusion, separate trials will be required for each Defendant.").

Joining 25 Defendants, involving six different ISP entities, would not only be inefficient, but would also pose a substantial logistical obstacle. Liberty Media Holdings, LLC, 277 F.R.D. at 672. This Court would need to find a court room large enough to hold 25 defendants and their counsel. On the Cheap, LLC, 2011 WL 4018258 at *2; Hard Drive Prods. Inc., 2011 WL 3740473 at *19. All litigants would have to be able to serve motions one all other litigants, something that would be especially difficult because there are likely to be many pro-se defendants who would not e-file. Hard Drive Prods. Inc., 2011 WL 3740473 at *19. Managing discovery would be a monumental undertaking. Id. (stating as an example that "[e]ach defendant would have the right to be at each other defendant's deposition - creating a thoroughly unmanageable situation.") Id. The Court would need to be able to manage case management conferences with more than two dozen of litigants. Bridgeport Music, Inc. v. 11 C Music, 202 F.R.D. 229, 232–33 (M.D.Tenn. 2001) The Court and each party would need to read and respond to an enormous volume of motions that would likely be filed. Hard Drive Prods., Inc., 2011 WL 3740473 at *19. And one can only imagine the logistical problems and manifest jury confusion that would result from a trial of 25 different and unrelated defendants each with their own set of witnesses. No jury could be reasonably expected to keep track of all such evidence and render a fair verdict to each defendant under such circumstances. "These burdens

completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice." Id.

In contrast, by severing the Doe Defendants, Plaintiff would not be unduly prejudiced. SBO Pictures, Inc, 2011 WL 6002620 at *4 (N.D. Cal. Nov. 30, 2011).  The three-year statute of limitations will not have run, and Plaintiff can file individual suits if it chooses.  Id.  Doe Defendant 6 only asks this Court to require Plaintiff to not join him with disconnected and unrelated defendants and that Plaintiff be required to pursue each of the Doe Defendants individually, in accordance with applicable law.[6]

## II.   THE SUBPOENA SHOULD BE QUASHED OR THE COURT SHOULD ISSUE A PROTECTIVE ORDER AGAINST ENFORCEMENT OF THE SUBPOENA BECAUSE PLAINTIFF HAS NOT ESTABLISHED THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT 6.

Plaintiff's proposed subpoena to Comcast Cable as to Defendant 6 should be quashed because Plaintiff has not alleged sufficient facts to state a plausible basis for personal jurisdiction.  Plaintiff asserts that "each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address traced to a physical address located within this district. Complaint, at ¶ 6.   But neither Plaintiff nor its witness, Tobias Fieser, give any explanation whatsoever about how this "trace" was purportedly accomplished. Mr. Fieser states only that he isolated IP addresses used on the BitTorrent peer-to-peer network, not physical addresses. See Declaration of Tobias Fieser, at ¶¶ 6, 17.  According to the Plaintiff itself, "each Doe Defendant is known to Plaintiff by only an IP address." Complaint, at ¶ 9. Notwithstanding Plaintiff's admission, Exhibit A to the complaint lists a city and state next to each IP address

---

[6] Plaintiff is a commercial enterprise with far greater financial resources than the individual defendants and requiring it to expend the funds to file individual lawsuits will not impair its ability to enforce any legitimate copyright infringement claims.

allegedly involved in copyright infringement. Plaintiff's allegations amount to nothing more than guess-work that this Court has jurisdiction. This Court should reject them as such.

In Celestial, an adult film-maker sought leave to subpoena ISPs to obtain identifying information of subscribers associated with IP addresses involved in downloading an adult film. Celestial Inc. v. Swarm Sharing Hash 8AB508AB0F9EF8B4CDB14C6248F3C96C65BEB882 on December 15, 2011, No. CV 12-00132 DDP (Ssx), 2012 WL 995273, at *1 (C.D. Cal. Mar. 23, 2012). Just like Plaintiff in this case, the adult film-maker in question hired IPP International UG, and submitted the declaration of Tobias Fieser in support of their motion. Id. In that case, the plaintiff stated "geo-locating tools" had placed the IP addresses of the defendants in California. Id. at *2. However, the plaintiff disclaimed any representations as to the reliability or level of accuracy of IP address geo-location tools, and did not provide any details regarding the tools used or the results. Id. Accordingly, the Celestial court denied the motion for early discovery and ordered the plaintiff to show cause why the matter should not be dismissed for lack of personal jurisdiction. Id. at *3.

In this case, the Plaintiff's allegations are even more vague than those in the Celestial case. Here, Plaintiff has alleged only the IP addresses were somehow "traced." Even if Plaintiff or its investigator used geo-location software and such geo-location software was reliable, geo-location would, at best, create only a reasonable inference that the internet subscriber, not the actual copyright infringer, resided within this Court's jurisdiction. As numerous courts have held, and as a matter of common sense, the person (or business) who pays for an internet connection is not necessarily the person who uses the internet connection, any more than a person who pays the telephone bill is the same person who makes the telephone call. In re Bittorrent Adult Film Copyright Infringement Cases, (Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB), Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB), Patrick

<u>Collins, Inc. v. John Does 1-9</u>, CV 12-1154 (ADS) (GRB): **Order and   Report and Recommendation,** (E.D.N.Y. May 1, 2012) at p.6.  Plaintiff here, just like in <u>Celestial</u>, has not established and cannot establish any reasonable basis to believe that any given copyright infringer, much less all 25 alleged infringers, reside within this jurisdiction.  Accordingly, the Court should quash the subpoena.

**CONCLUSION**

For all the foregoing reasons, the Court should enter an Order severing the claims against each Doe Defendants 2-24 and quashing Plaintiff Malibu Media, LLC's subpoena of Comcast Cable regarding Doe Defendant #6 or alternatively entering a protective order against enforcement of that subpoena as to Defendant 6 .

HOLLAND & KNIGHT LLP

/s/ Jerome W. Hoffman
Jerome W. Hoffman
Florida Bar No. 0258830
jerome.hoffman@hklaw.com
Ben Z. Williamson
Florida Bar No. 0087454
ben.williamson@hklaw.com
Holland & Knight LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301-1809
Tel:    850-224-7000
Fax:    850-224-8832

**Attorney for Defendant DOE 6**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jerome W. Hoffman
Attorney

#11378236_v1