## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 2:12-cv-00266-JES-DNF |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DOE DEFENDANT 6'S MOTION TO SEVER DEFENDANTS AND QUASH SUBPOENA OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER, AND INCORPORATED MEMORANDUM OF LAW [DKT. #13]**

## I.    INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion because joinder is proper and Plaintiff has properly pled personal jurisdiction.  Defendant creates a fictional picture of Plaintiff's purpose in an effort to mislead and distract the Court from the serious copyright infringement claim brought by Plaintiff.  Plaintiff Malibu Media's motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deter the future theft of its movies.  If there were an easier way to stop the infringement, Malibu Media would immediately pursue it.

Earlier this month, this Court addressed the same issues raised in Defendant's motion, finding the requested relief inappropriate and lacking merit.  See Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP (M.D. Fla. July 6, 2012) (Ex. A).  The Honorable Judge Porcelli, after several briefings and a hearing on these issues, stated:

> Plaintiff has shown that it holds a copyright and that a forensic investigation has revealed potential infringement of its rights in its copyrighted work.  Furthermore, Plaintiff has specifically identified the information it seeks through the expedited

discovery and shown it has no other means to obtain the information.   <u>Any</u> <u>arguments to the contrary are simply without merit.</u>

<u>Id.</u> at *4. (Emphasis added).

Both the Eighth and Second Circuits, the only circuits to rule on this issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants.   The Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." <u>In re Charter Communications, Inc., Subpoena Enforcement Matter</u>, 393 F.3d 771, FN3 (8th Cir. 2005).  Similarly, in <u>Arista Records, LLC. v. Doe 3</u>, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany."  By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants.   Doe 3 in the <u>Arista</u> case unsuccessfully argued he or she had a First Amendment right to remain anonymous that outweighed a Plaintiff's right under the Petition Clause of the U.S. Constitution to sue for copyright infringement.   Additionally, the Second Circuit rejected Doe 3's assertion that the Supreme Court's heighted pleading standards as announced in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1337 (2009) made it impossible to plead a claim of infringement against an on-line anonymous infringer.

Recently this Court issued a Report and Recommendation on this issue, stating "[t]he Court recognizes that each Defendant may later present different factual and substantive legal defenses, but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." <u>Malibu Media v. John Does 1-13</u>, 2:12-cv-0177-JES-SPC (M.D. Fl. June 6, 2012).

Both the Middle District of Florida and the Southern District of Florida have issued opinions holding joinder is proper in copyright infringement BitTorrent actions at this stage of the litigation process and that plaintiffs have demonstrated good cause to receive discovery to identify the anonymous Doe Defendants.  See Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012) ("[t]he Court recommends that Defendant's improper joinder argument should fail"); see also AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012) ("[a]s other courts have found, joinder of Doe Defendants is appropriate under such circumstances").

As explained below, the overwhelming majority of courts permit joinder in BitTorrent actions.  Joinder is proper because the claims against all defendants are logically related and Plaintiff is seeking joint and several liability.  Joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in many opinions and has been permitted almost universally where, as here: (a) the complaint clearly explains how BitTorrent works through a series of transactions, (b) all of the defendants live in the district (eliminating long-arm issues and venue), (c) all of the defendants were part of the same exact swarm of peer infringers as evidenced by a unique cryptographic hash value, and (d) Plaintiff pled that the Defendants' are contributorily liable for each others' infringement.  Recently, a court in New York examined the issue and held joinder is proper, concluding:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).

Digital Sin, Inc. v. Does 1-176, 2012 WL 263491 (S.D.N.Y. 2012); see also Patrick Collins, Inc. v. John Does 1-33, 2012 WL 415424 (D. Colo. 2012).

While courts have wide discretion to permit permissive joinder, this discretion must be

exercised consistent with the requirement set forth in Rule 1 and the policy underlying Rule 20.

Applying the existing law surrounding joinder to the facts in this case leads to but one

inescapable conclusion: joinder is proper and should be permitted.

## II.   **JOINDER IS PROPER**

The Middle District of Florida has consistently found the actions of the Defendants in

copyright infringement cases are sufficient to meet the standards of joinder.  See K-Beech Inc.,

v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC (M.D. Fl. 2011); see also Nu Image, Inc. v.

Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012).

> Based on these allegations, the Court finds that Plaintiff's claims against the
> Defendants are logically related. Each John Doe Defendant is a possible source
> for the Plaintiff's work, and may be responsible for distributing the movie to other
> John Doe Defendants, who are also using the same file-sharing protocol to copy
> the identical copyrighted material.

Id.

### A.   **The Infringement Occurred Through a Series of Transactions**

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to

be proper when there is something other than a direct transaction.  "Series" has been interpreted

by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against
> another generally are regarded as comprising a transaction or occurrence. The
> analogous interpretation of the terms as used in Rule 20 would permit all
> reasonably related claims for relief by or against different parties to be tried in a
> single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial,

Plaintiff will prove that the Defendants' infringement was committed through the same

transaction or through a series of transactions with mathematical certainty by demonstrating,

*inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of

transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

**i.    Series of Transactions Explained By the Michigan Court**

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in

a near identical case, expanding substantial effort to understand the allegations in the complaint

and the applicable law.  Judge Randon summarized the plaintiff's allegation asserting that each

Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one
> piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is
> important to understand the implications of this allegation before determining
> whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted
> Movie from each Defendant (and, conversely, each Defendant uploaded at least
> one piece of the Movie to IPP) then each Defendant had at least one piece of the
> Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her
> computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP
> address of each of Defendants' computers, connected with each Defendants'
> computer, and downloaded at least one piece of the Movie from each Defendants'
> computer. During this transaction, IPP's computer verified that each Defendants'
> piece of the Movie had the expected Hash; otherwise, the download would not
> have occurred.

<u>Patrick Collins, Inc. v. John Does 1-21</u>, CIV.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D.

Mich. Apr. 5, 2012).  Significantly, Judge Randon than explained through the force of clear

deductive logic that each Defendant obtained the piece of plaintiff's movie in one of four ways

all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the
> piece(s) each had on his or her computer in one, or more, of the following four
> ways:
> 1) the Defendant connected to and transferred a piece of the Movie **from the
> initial seeder;** or
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder**
> who downloaded the completed file from the initial seeder or from other peers; or
> 3) the Defendant connected to and transferred a piece of the Movie **from other
> Defendants** who downloaded from the initial seeder or from other peers; or
> 4) the Defendant connected to and transferred a piece of the Movie **from other
> peers** who downloaded from other Defendants, other peers, other Seeders, or the
> Initial Seeder.

> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Id. Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

Id.

### B. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.  As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

<u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012).  Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Michigan Court further explained that time constraints should not impact that the infringements occurred through a series of transactions.  "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm."  <u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### a.  The Time Period Amongst the Defendants is Reasonable Under Eleventh Circuit Case Law

In <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303 (11th Cir. 2000) <u>overruled on other grounds by</u> <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003) the Eleventh Circuit held a short time frame existed when the actions by the defendant took place within a year.

> As for the first requirement, all of the Plaintiffs' claims stem from <u>the same core allegation that they were subject to a *systemic* pattern</u> or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett <u>in her first year in office</u>.  Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame.

<u>Id.</u> at 1324.  (Emphasis added).  Here, all of the defendants engaged in the same systematic pattern of infringement and the time frame between the defendants on Exhibit A exists in approximately three months from the first hit date to the last hit date.

### b.  Other Courts Have Held the Time Frame in BitTorrent Actions is Irrelevant

The Northern District of California has also explained why the time gap in BitTorrent infringement cases does not impact the basic principles of joinder.  "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long

as the alleged defendants participate in the same swarm, downloading and uploading the same file." First Time Videos, LLC v. Does 1-95, C 11-3822 MEJ, 2011 WL 4724882 (N.D. Cal. Oct. 7, 2011). "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." Id.

Other courts, when ruling on the issue of joinder have held that even when conduct occurs over a lengthy period of time, defendants may still be properly joined as long as the conduct is reasonably related. See Kedra v. City of Philadelphia, 454 F. Supp. 652, 662 (E.D. Pa. 1978) (holding joinder is proper when claims against police officers including unlawful searches, detentions, beatings and similar occurrences of multiple plaintiffs took place over a period of time).

> There is no logical reason why the systematic conduct alleged could not extend over a lengthy time period and, on the face of these allegations, there is nothing about the extended time span that attenuates the factual relationship among all of these events. The claims against the defendants "aris(e) out of the same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a), and therefore joinder of defendants in this case is proper.

Id. The case at hand is similar. While the actions of each of the defendants may have taken place over a period of time, the actions all arose from one initial seed and all display the same systematic conduct which is reasonably related.

## C. There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-

FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012).  The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant."  Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

**D.  Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This Stage**

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants.  "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency."  Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

The Southern District of New York addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts."  Digital Sin, at FN 6.

**E.  The Cases Relied Upon By John Doe Have Been Distinguished In Such A Way As Would Make Joinder Proper Here**

Defendant relies heavily on the order issued by the Honorable Judge Gibney in the Eastern District of Virginia.  See Raw Films, Ltd. vs. Does 1-32, Case 3:11-cv-00532-JAG (E.D. Va. 2011).  This decision was decided *sua sponte* without the plaintiff being afforded the opportunity to brief the issue.  At the time this decision was made, the Honorable Judge Gibney was unaware of any of the myriad of cases that hold joinder is proper as evidenced by his finding pursuant to Rule 11 that "the joinder of unrelated defendants does not seem to be warranted by existing law."  Id. at *5.

The plaintiff demonstrated at the hearing on December 20th, 2011 that it had a proper

purpose and the Honorable Judge Gibney ruled that there were no Rule 11 violations. Id. at Order December 20, 2011.   Here, Plaintiff's purpose is plain and simple: to receive compensation for the mass theft of its property and deter future infringement.

A Maryland court expressly cited to, quoted, and expressly disagreed with Judge Gibney's decision to sever: "[c]onsidering the two requirements for permissive joinder under Federal Rule 20(a)(2) as they apply to the instant action, the Court finds that at this procedural juncture, joinder of the putative Defendants is proper." See Patrick Collins, Inc., v. Does 1-11, Case 11-cv-01776-AW, *3-4 (D. MD 2011).   Similarly, another judge in 4th Circuit from North Carolina also held joinder was proper.   See Patrick Collins, Inc. v. Does 1-26, Case 3:11CV394-FDW-DSC (N.C. 2011), Dkt 19.

Some of the cases cited by Defendant, unlike this case, involve multiple Plaintiffs and infringement of multiple copyrights in the same lawsuit.   See Interscope Records, et. al. v. Does 1-25, 2004 U.S. Dist. LEXIS, Case No. 6:04-cv-197 – ACC- DAB (M.D. Fla. 2004), (16 Plaintiffs and dozens if not hundreds of songs, see the Complaint at ¶¶ 4-19 and Exhibit A to the Complaint).   Since multiple works were at issue in these copyright cases, the Plaintiffs in those cases did not plead that the online infringements were part of the same transaction or series of transactions or that the defendants in those cases were contributorily liable for each others' infringement.

Here, all of the defendants infringed on one work by Plaintiff, within the same BitTorrent swarm.   As the Middle District of Florida states, "[t]he Court recognizes that each Defendant may later present different factual and substantive legal defenses, but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)."   K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC,   at*12 (M.D. Fl. 2011).

Defendant relies on Hard Drive Prods v. Does 1-188, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb 3, 2011).  Courts have expressly distinguished Hard Drive Prods, holding joinder is proper in cases just like this one, where all of the Defendants participated in the same BitTorrent swarm.  See Liberty Media Holdings, LLC v. Does 1-62, 2012 WL 628309. *7 (S.D. Cal. Feb. 24, 2012).

> Here, unlike *Hard Drive Prods.,* where it was unclear whether all one hundred and eighty eight doe defendants were part of the same "swarm," Plaintiff alleges all Defendants participated in the same "swarm" and all of the IP addresses identified downloaded and shared the same unique "hash" (a file identifier) [Compl, ¶ 3.] This allegation supports Plaintiff's claim that Doe Defendants "collectively" infringed on Plaintiff's copyright.

Id. (Emphasis added).  Just like in Liberty Media, Plaintiff has alleged all Defendants participated in the same "swarm" and all of the IP addresses identified downloaded and shared the same unique "hash".

Defendant's citation to LaFace Records v. Does 1-38, 2008 WL 544992 (E.D.N.C. 2008) is also misplaced.  In LaFace, eleven recording studios sued over dozens of copyrights.  The only commonality supporting joinder was that the Defendants used Gnutella, a peer-to-peer file sharing protocol.  Significantly, Gnutella works through one peer to one peer transactions; i.e., a user connects to one computer and gets the whole file.  Here, Plaintiff only sued on one copy of one movie which was broken up into pieces by BitTorrent.   And, Plaintiff alleged that the Defendants were distributing the pieces to each other.  Indeed, BitTorrent works differently than Gnutella insofar as it causes all participants in a swarm to upload pieces of the movie to each other.  Consequently, here, Plaintiff pled that each of the Defendants is contributorily liable for the infringement of each of the other Defendants.  This is yet another basis to hold that joinder is proper.

III.   **PERSONAL JURISDICTION IS PROPER**

"[M]ost courts have held that a plaintiff succeeds in making out a prima facie case of personal jurisdiction where, relying on geolocation software that can identify the likely geographical locations of IP addresses, the plaintiff alleges that all defendants reside in the state within which the court is located." Digital Sin, Inc. v. Does 1-27, 12 CIV. 3873 JMF, 2012 WL 2036035 (S.D.N.Y. June 6, 2012).   Here, Plaintiff has made a prima facie case of personal jurisdiction because it has used geolocation software to determine that the Doe Defendants all reside or own an Internet account with an address in this state and in this district.

IPP Limited provided Plaintiff with the Doe Defendants' IP addresses, hit dates of infringement and the correlating hash values for each infringement.   That is how the Doe Defendants were selected to be included in all of its cases across the country, including the Doe Defendants in the suits in this case.   Thereafter, for each of the suits filed by Plaintiff, Maxmind® Premium's IP geolocation tracing service was used to determine that each of the Doe Defendants' IP Addresses trace to a location inside the Middle District of Florida.   Maxmind® Premium's IP geolocation tracing service was also used in all of Plaintiff's other federal cases across the country.   Statistics from Plaintiff's prior cases demonstrate that this process accurately predicted that a Doe defendant's IP Address would trace to the correct district 99.6% of the time. In 483 instances Plaintiff has compared the trace city provided by Maxmind to the subpoena response provided by defendant's ISP.   One response indicated a Doe defendant resided .9 miles from the District of Columbia where Plaintiff sued him.   The other placed a Doe defendant in the Northern District of Florida when Plaintiff sued him in the Middle District of Florida.   All other responses correctly placed the defendant in the district identified by Maxmind.   Plaintiff believes these statistics satisfy the necessary standards to plead a good faith belief that personal jurisdiction is proper over the defendants.

Notwithstanding the foregoing, should any Defendant raise a defense of personal jurisdiction, Plaintiff will immediately dismiss the Defendant and sue him in his proper jurisdiction.

## IV.   THIS COURT SHOULD NOT ISSUE A PROTECTIVE ORDER

"The party 'seeking a protective order carries the burden of showing good cause and/or the right to be protected.'" Nathai v. Florida Detroit Diesel-Allison, Inc., 3:09-CV-1-J-20HTS, 2009 WL 2424570 (M.D. Fla. Aug. 5, 2009).  "To make a showing of good cause, the movant has the burden of showing the injury 'with specificity.'"  Trinos v. Quality Staffing Services Corp., 250 F.R.D. 696, 698 (S.D. Fla. 2008) (internal citations omitted).  Defendant fails to specify what type of protective order he is seeking or any particular injury that would justify a protective order.

The Southern District of Florida has twice denied similar defendants' requests for Protective Orders.  See Boy Racer, Inc. v. John Does 1-34, 11-23035, 2012 WL 1535703, at *3 (S.D. Fla. May 1, 2012) (following AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217 (S.D. Fla. Feb. 14, 2012).

> The AF Holdings court also rejected the same type of extortion arguments raised in this case. In doing so, that court relied on the Liberty Media Holdings case for the notion that "the potential embarrassment or social stigma that [the Doe Defendants] may face once their identities are released in connection with this lawsuit is not grounds for allowing them to proceed anonymously."

Id. at *4 (citing Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05, 821 F. Supp. 2d 444 (D. Mass. 2011).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: July 30, 2012

Respectfully submitted,

By: /s/ M. Keith Lipscomb
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ M. Keith Lipscomb