## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

MALIBU MEDIA, LLC.,          )
                              )
        Plaintiff,          )   Case No: 2:12-cv-00266-JES-DNF
                              )
v.                             )
                              )
JOHN DOES 1-25,            )
                              )
        Defendants.       )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 3'S MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION, MOTION TO DISMISS OR SEVER DEFENDANTS FOR IMPROPER JOINDER, MOTION TO QUASH THIRD PARTY SUBPOENA OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF.**

## I.    INTRODUCTION

      Plaintiff respectfully requests the Court deny Defendant's motion. Defendant creates a fictional picture of Plaintiff's purpose in an effort to mislead and distract the Court from the serious copyright infringement claim brought by Plaintiff. As an initial point, Defendant's Motion is based significantly on attacks to Plaintiff which are entirely unsubstantiated. "The only argument remaining—that copyright infringement suits of this sort are baseless 'fishing expeditions' used solely to extort money from alleged infringers—amounts to nothing more than an *ad hominem* attack on the Plaintiff. This line of argument fails to persuade." AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217 at *1 (S.D. Fla. Feb. 14, 2012). Plaintiff Malibu Media's motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deters the future theft of its movies. If there were an easier way to stop the infringement, Malibu Media would immediately pursue it.

      Earlier this month, this Court addressed the same issues raised in Defendant's motion,

finding the requested relief inappropriate and lacking merit.  See Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP (M.D. Fla. July 6, 2012).  The Honorable Judge Porcelli, after several briefings and a hearing on these issues, stated:

> Plaintiff has shown that it holds a copyright and that a forensic investigation has revealed potential infringement of its rights in its copyrighted work.  Furthermore, Plaintiff has specifically identified the information it seeks through the expedited discovery and shown it has no other means to obtain the information.  Any arguments to the contrary are simply without merit.

Id. at *4. (Emphasis added).

Recently this Court issued a Report and Recommendation on this issue, stating "[t]he Court recognizes that each Defendant may later present different factual and substantive legal defenses, but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)."  Malibu Media v. John Does 1-13, 2:12-cv-0177-JES-SPC (M.D. Fl. June 6, 2012) (Exh. B).

Both the Middle District of Florida and the Southern District of Florida have also issued opinions holding joinder is proper in copyright infringement BitTorrent actions at this stage of the litigation process and that plaintiffs have demonstrated good cause to receive discovery to identify the anonymous Doe Defendants.  See Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012) ("[t]he Court recommends that Defendant's improper joinder argument should fail"); see also AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012) ("[a]s other courts have found, joinder of Doe Defendants is appropriate under such circumstances").

As explained below, the overwhelming majority of courts permit joinder in BitTorrent actions.  Joinder is proper because the claims against all defendants are logically related and Plaintiff is seeking joint and several liability.  Joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in many opinions and has been permitted almost universally

where, as here: (a) the complaint clearly explains how BitTorrent works through a series of transactions, (b) all of the defendants live in the district (eliminating long-arm issues and venue), (c) all of the defendants were part of the same exact swarm of peer infringers as evidenced by a unique cryptographic hash value, and (d) Plaintiff pled that the Defendants' are contributorily liable for each others' infringement.   Recently, a court in New York examined the issue and held joinder is proper, concluding:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).

Digital Sin, Inc. v. Does 1-176, 2012 WL 263491 (S.D.N.Y. 2012); see also Patrick Collins, Inc. v. John Does 1-33, 2012 WL 415424 (D. Colo. 2012).

While courts have wide discretion to permit permissive joinder, this discretion must be exercised consistent with the requirement set forth in Rule 1 and the policy underlying Rule 20. Applying the existing law surrounding joinder to the facts in this case leads to but one inescapable conclusion: joinder is proper and should be permitted.

## II.   THE COURT HAS JURISDICTION OVER THE JOHN DOE DEFENDANTS

"[M]ost courts have held that a plaintiff succeeds in making out a prima facie case of personal jurisdiction where, relying on geolocation software that can identify the likely geographical locations of IP addresses, the plaintiff alleges that all defendants reside in the state within which the court is located."  Digital Sin, Inc. v. Does 1-27, 12 CIV. 3873 JMF, 2012 WL 2036035 (S.D.N.Y. June 6, 2012).   Here, Plaintiff has made a prima facie case of personal jurisdiction because it has used geolocation software to determine that the Doe Defendants all reside or own an Internet account with an address in this state and in this district.

IPP Limited provided Plaintiff with the Doe Defendants' IP addresses, hit dates of infringement and the correlating hash values for each infringement. That is how the Doe Defendants were selected to be included in all of its cases across the country, including the Doe Defendants in the suits in this case. Thereafter, for each of the suits filed by Plaintiff, Maxmind® Premium's IP geolocation tracing service was used to determine that each of the Doe Defendants' IP Addresses trace to a location inside the Middle District of Florida. Maxmind® Premium's IP geolocation tracing service was also used in all of Plaintiff's other federal cases across the country. Statistics from Plaintiff's prior cases demonstrate that this process accurately predicted that a Doe defendant's IP Address would trace to the correct district 99.6% of the time. In 483 instances Plaintiff has compared the trace city provided by Maxmind to the subpoena response provided by defendant's ISP. One response indicated a Doe defendant resided .9 miles from the District of Columbia where Plaintiff sued him. The other placed a Doe defendant in the Northern District of Florida when Plaintiff sued him in the Middle District of Florida. All other responses correctly placed the defendant in the district identified by Maxmind. Plaintiff believes these statistics satisfy the necessary standards to plead a good faith belief that personal jurisdiction is proper over the defendants.

Notwithstanding the foregoing, should any Defendant raise a defense of personal jurisdiction, Plaintiff will immediately dismiss the Defendant and sue him in his proper jurisdiction.

## III.   JOINDER IS PROPER

The Middle District of Florida has consistently found the actions of the Defendants in copyright infringement cases are sufficient to meet the standards of joinder. See K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC (M.D. Fl. 2011); see also Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012).

Based on these allegations, the Court finds that Plaintiff's claims against the Defendants are logically related. Each John Doe Defendant is a possible source for the Plaintiff's work, and may be responsible for distributing the movie to other John Doe Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.

Id.

## A. **The Infringement Occurred Through a Series of Transactions**

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### i. **Series of Transactions Explained By the Michigan Court**

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expanding substantial effort to understand the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted

Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.

By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

Patrick Collins, Inc. v. John Does 1-21, CIV.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D.

Mich. Apr. 5, 2012).  Significantly, Judge Randon than explained through the force of clear

deductive logic that each Defendant obtained the piece of plaintiff's movie in one of four ways

all of which relate directly back to one individual seed.

If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:

1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or

2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or

3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or

4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Id.  Having limited the universe to four possibilities the court correctly concluded the

transaction was logically related.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by

5

other peers and Defendants in the same swarm.

Id.

### B.   The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.   Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.   As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012).   Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Michigan Court further explained that time constraints should not impact that the infringements occurred through a series of transactions.   "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm."  Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### a. The Time Period Amongst the Defendants is Reasonable Under Eleventh Circuit Case Law

In <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303 (11th Cir. 2000) <u>overruled on other grounds by</u> <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003) the Eleventh Circuit held a short time frame existed when the actions by the defendant took place within a year.

> As for the first requirement, all of the Plaintiffs' claims stem from <u>the same core allegation that they were subject to a *systemic* pattern</u> or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett <u>in her first year in office</u>. Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame.

<u>Id.</u> at 1324. (Emphasis added). Here, all of the defendants engaged in the same systematic pattern of infringement and the time frame between the defendants on Exhibit A exists in approximately three months from the first hit date to the last hit date.

### b. Other Courts Have Held the Time Frame in BitTorrent Actions is Irrelevant

The Northern District of California has also explained why the time gap in BitTorrent infringement cases does not impact the basic principles of joinder. "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the same swarm, downloading and uploading the same file." <u>First Time Videos, LLC v. Does 1-95</u>, C 11-3822 MEJ, 2011 WL 4724882 (N.D. Cal. Oct. 7, 2011). "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." <u>Id.</u>

Other courts, when ruling on the issue of joinder have held that even when conduct occurs over a lengthy period of time, defendants may still be properly joined as long as the conduct is reasonably related. <u>See</u> <u>Kedra v. City of Philadelphia</u>, 454 F. Supp. 652, 662 (E.D.

Pa. 1978) (holding joinder is proper when claims against police officers including unlawful searches, detentions, beatings and similar occurrences of multiple plaintiffs took place over a period of time).

> There is no logical reason why the systematic conduct alleged could not extend over a lengthy time period and, on the face of these allegations, there is nothing about the extended time span that attenuates the factual relationship among all of these events. The claims against the defendants "aris(e) out of the same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a), and therefore joinder of defendants in this case is proper.

Id.  The case at hand is similar.  While the actions of each of the defendants may have taken place over a period of time, the actions all arose from one initial seed and all display the same systematic conduct which is reasonably related.

### C.  There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact.  "The Plaintiff meets this requirement.  In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012).  The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

### D.  Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This Stage

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants.  "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency." Patrick

Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

The Southern District of New York addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." Digital Sin, Inc. v. Does 1-176, 2012 WL 263491 (S.D.N.Y. 2012).

## IV.  THIS COURT SHOULD NOT QUASH THE SUBPOENA

### A. Plaintiff's Only Option to Identify the Infringer is Through His or Her IP Address

Defendant's IP address is the only way to identify the infringer. Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. At this stage of the litigation process it is sufficient that Plaintiff's complaint properly pled that Defendant is liable for direct and contributory infringement. These allegations are reasonable because the subscriber is the most likely infringer. The Eastern District of Pennsylvania recently addressed this exact issue and noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Raw Films, Ltd. v. John Does 1-15, Case No. 11-7248, at14 (E.D. Pa. March 23, 2012). Further, when addressing the issue of whether the infringer is the account holder of the IP address, the court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Id. The court also held, "although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." Id. at 19. This proposition was recently adopted in Florida by this Court stating, "clearly the identity of the

ISP customer is relevant under Rule 26 in that it is "reasonably calculated" to lead to the identity of the infringer whether it is the ISP customer or some other individual." <u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP (M.D. Fla. July 6, 2012).

This Court has granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has shown good cause in that it has no other way to identify the Defendants and proceed with its copyright infringement case against them.  Plaintiff has requested only the identifying information of the Defendants from their ISPs.  As other courts have explained, the information Plaintiff seeks is highly relevant.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. <u>The information sought is thus highly relevant to the plaintiff's claims.</u>

<u>Raw Films, Ltd. v. John Does 1-15</u>, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).

Plaintiff believes that recent technological advances make it more likely that a wireless account will be secured and can easily be traced to a household where the subscriber either is the infringer or knows the infringer.  Recently, PC Magazine published an article regarding the scarcity of open wireless signals.  "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[1]  The author continues to explain why routers are now more likely to be secured.  "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software.  As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[2]  This article, published on March 26, 2012, runs contrary to Defendant's assertions and supports the idea that

---

[1] <u>See</u> <u>Free Wi-Fi is Gone Forever</u> www.pcmag.com/article2/0,2817,2402137,00.asp
[2] <u>Id.</u>

most households do have closed, protected wireless that are not likely to be used by a neighbor or interloper.

Further, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes.  In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[3]

The Eastern District of Pennsylvania court directly addressed whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).  (Internal citations omitted).  The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply."  Id.

## B.  **Plaintiff Has Shown Good Cause**

Defendant fails to state with any specificity Plaintiff's alleged lack of good faith in bringing this suit.  This Court has found Plaintiff has demonstrated good cause.  See Doc. 6. Recently the Eastern District of Michigan addressed Defendant's argument, stating that an

---

[3] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

unsubstantiated claim of improper settlement tactics does not justify quashing an otherwise valid

subpoena.  Third Degree Films v. Does 1-36, 11-CV-15200 (E.D. Mich. May 29, 2012).

> To the extent that it is independent, the Court notes that while Defendant claims
> that this suit was brought only to scare up settlements (Def.'s Mot. to Sever at 2,
> 11), Defendant has offered no case-specific facts supporting this claim. Rather,
> Defendant relies on the conduct of adult-film companies in other cases. This guilt-
> by-association argument does not justify quashing the subpoena that this Plaintiff,
> Third Degree Films, served on Defendant's ISP pursuant to an Order entered by
> Judge Murphy allowing this discovery.

Id.  (Emphasis added).

At this stage of the litigation process, Plaintiff has no other option but to file suit against

the owners of these IP addresses to obtain the infringers identity.  If this Court were to follow

Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement

it suffers on a daily basis.  Any such holding would be contrary to existing law and the express

policy of Congress.   In 1999 Congress intentionally amended the Copyright Act to deter

individuals from infringing copyrights on the internet by increasing the statutory remedies:

> Congress did contemplate that suits like this [against individuals] were within
> the Act. Congress last amended the Copyright Act in 1999 to increase the
> minimum and maximum awards available under § 504(c).  See Digital Theft
> Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No.
> 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that
> consumer-based, noncommercial use of copyrighted materials constituted
> actionable copyright infringement. Congress found that "copyright piracy of
> intellectual property flourishes, assisted in large part by today's world of
> advanced technologies," and cautioned that "the potential for this problem to
> worsen is great."

Sony v. Tennenbaum, 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

During her time as Register of Copyright, Mary Beth Peters explained the rights of

copyright holders in peer-to-peer infringement actions to the Senate Judiciary Committee.  "The

law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works

without permission is infringement and copyright owners have every right to invoke the power of

the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement." [4] Ms. Peters further explained the significant need for exactly the type of copyright infringement claims that are before this Court:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. <u>For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences.</u> Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or <u>against the persons engaging in individual acts of infringement using such services</u>.

<u>Id</u>.  (Emphasis added).

### C.  <u>Plaintiff's Settlements are Proper</u>

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement is an attempt at coercion.  Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options.  The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." <u>Marek v. Chesny</u> 473 U.S. 1, 11 (1985).  Further, Plaintiff has a First Amendment right under the petition clause to

---

[4] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

make the demand.  See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the

protections of the Petition Clause extend to settlement demands as a class," including those made

during and prior to a suit.)

## V.   THIS COURT SHOULD NOT ISSUE A PROTECTIVE ORDER

"The party 'seeking a protective order carries the burden of showing good cause and/or

the right to be protected.'" Nathai v. Florida Detroit Diesel-Allison, Inc., 3:09-CV-1-J-20HTS,

2009 WL 2424570 (M.D. Fla. Aug. 5, 2009).  "To make a showing of good cause, the movant

has the burden of showing the injury 'with specificity.'" Trinos v. Quality Staffing Services

Corp., 250 F.R.D. 696, 698 (S.D. Fla. 2008) (internal citations omitted).  Defendant fails to show

any specific needs for a protective order.  On the one hand, Defendant claims that Plaintiff has an

improper purpose for failing to serve Defendants, but he then seeks a protective order claiming it

would be unjust if he himself were named and served.

The Southern District of Florida has twice denied similar defendants' requests for

Protective Orders.  See Boy Racer, Inc. v. John Does 1-34, 11-23035, 2012 WL 1535703, at *3

(S.D. Fla. May 1, 2012) (following AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL

488217 (S.D. Fla. Feb. 14, 2012).

> The AF Holdings court also rejected the same type of extortion arguments raised
> in this case. In doing so, that court relied on the Liberty Media Holdings case for
> the notion that "the potential embarrassment or social stigma that [the Doe
> Defendants] may face once their identities are released in connection with this
> lawsuit is not grounds for allowing them to proceed anonymously."

Id. at *4 (citing Liberty Media Holdings, LLC v. Swarm Sharing Hash File

AE340D0560129AFEE8D78CE07F2394C7B5BC9C05, 821 F. Supp. 2d 444 (D. Mass. 2011).

In this case it seems particularly questionable that Defendant would be subject to any so called

"settlement tactics" when Defendant is represented by counsel.

14

## VI.    THIS COURT SHOULD NOT DISMISS THE COMPLAINT

Each defendant in this case downloaded the same exact torrent file as evidenced by the unique cryptographic hash.  Plaintiff refers to the file defendants distributed as a "siterip" because the file consisted of Plaintiff's entire website and almost complete catalogue of movies created.  Importantly, however, Plaintiff only brings claims against registered works.  Here, the infringers of the file containing 107 of Plaintiff's movies have fewer claims against them because not all of Plaintiff's copyrights were registered at the time this suit was brought.  In one file Defendants can steal Plaintiff's intellectual property created with valuable resources, extensive time, and incredible expense.

Last month this Court recommended a similar motion to dismiss be denied because the defendant had not yet been named and served.  See Malibu Media v. John Does 1-13, 2:12-cv-0177-JES-SPC (M.D. Fl. June 6, 2012).  Likewise, Defendant's Motion to Dismiss should also be denied because the Defendant has not yet been identified.  This Court, citing the District Court of the District of Columbia, found that Motions to Dismiss at this stage of the litigation process are premature.  Id.

> Plaintiff has yet to formally identify any of the John Doe Defendants named in the Complaint or serve them with process. Although the movants generally assume that they will be named as defendants once their contact information is turned over to Plaintiff by their ISP, the Court cannot automatically draw that conclusion. If as many movants have asserted, their internet accounts were used by third parties to unlawfully infringe Plaintiff's copyrighted   film, then it is those parties, rather than the movants themselves, who should properly be named as defendants. Until Plaintiff formally names and serves each defendant, the Court cannot be certain whether any of the movants will be compelled to defend this action as parties.

Id. citing West Coast Productions, Inc. v. Does 1–5,829, 275 F.R.D. 9, 14 (D.D.C. 2011). Additionally here, Plaintiff pled that the Doe Defendants committed the infringement. Black letter law requires the Court to accept these allegations as true. "Rule 12(b)(6) does not

15

countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: July 30, 2012

                                     Respectfully submitted,

                                     By: <u>/s/ *M. Keith Lipscomb*</u>
                                     M. Keith Lipscomb (429554)
                                     klipsomb@lebfirm.com
                                     LIPSCOMB EISENBERG & BAKER, PL
                                     2 South Biscayne Blvd.
                                     Penthouse 3800
                                     Miami, FL 33131
                                     Telephone: (786) 431-2228
                                     Facsimile:  (786) 431-2229
                                     *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                      By: <u>/s/ *M. Keith Lipscomb*</u>