**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC., ) | |
| ) | |
| Plaintiff, ) | Case No: 2:12-cv-00266-JES-DNF |
| ) | |
| v. ) | |
| ) | |
| JOHN DOES 1-25, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 18'S SPECIAL APPEARANCE MOTION TO DISMISS PARTY, MOTION TO QUASH SUBPOENA, MOTION FOR PROTECTIVE ORDER, MOTION TO SEVER FOR IMPROPER JOINDER, AND MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION [DKT. 21]**

**I.   INTRODUCTION**

Plaintiff respectfully requests the Court deny Defendant's motion. Defendant creates a fictional picture of Plaintiff's purpose in an effort to mislead and distract the Court from the serious copyright infringement claim brought by Plaintiff. As an initial point, Defendant's Motion is based significantly on attacks to Plaintiff which are entirely unsubstantiated. "The only argument remaining—that copyright infringement suits of this sort are baseless 'fishing expeditions' used solely to extort money from alleged infringers—amounts to nothing more than an *ad hominem* attack on the Plaintiff. This line of argument fails to persuade." AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217 at *1 (S.D. Fla. Feb. 14, 2012). Plaintiff Malibu Media's motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deter the future theft of its movies. If there were an easier way to stop the infringement, Malibu Media would immediately pursue it.

Both the Eighth and Second Circuits, the only circuits to rule on this issue, have approved

the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. The Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005). Similarly, in Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants. Doe 3 in the Arista case unsuccessfully argued he or she had a First Amendment right to remain anonymous that outweighed a Plaintiff's right under the Petition Clause of the U.S. Constitution to sue for copyright infringement. Additionally, the Second Circuit rejected Doe 3's assertion that the Supreme Court's heighted pleading standards as announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1337 (2009) made it impossible to plead a claim of infringement against an on-line anonymous infringer.

Both the Middle District of Florida and the Southern District of Florida have issued opinions holding joinder is proper in copyright infringement BitTorrent actions at this stage of the litigation process and that plaintiffs have demonstrated good cause to receive discovery to identify the anonymous Doe Defendants. See Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012) ("[t]he Court recommends that Defendant's improper joinder argument should fail"); see also AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012) ("[a]s other courts have found, joinder of Doe Defendants is appropriate under such circumstances").

Earlier this month, this Court addressed the same issues raised in Defendant's motion,

finding the requested relief inappropriate and lacking merit. See <u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP (M.D. Fla. July 6, 2012). The Honorable Judge Porcelli, after several briefings and a hearing on these issues, stated:

> Plaintiff has shown that it holds a copyright and that a forensic investigation has revealed potential infringement of its rights in its copyrighted work. Furthermore, Plaintiff has specifically identified the information it seeks through the expedited discovery and shown it has no other means to obtain the information. <u>Any arguments to the contrary are simply without merit.</u>

<u>Id.</u> at *4. (Emphasis added).

## II.     ADULT FILM CONTENT IS COPYRIGHTABLE

In a footnote to Defendant's motion, Defendant attempts to call into question the copyrightability of Plaintiff's works. Defendant argues this Court should reject Plaintiff's legally protected copyright on the basis of Defendant's moral objection. Any such holding would be devastating to copyright holders and contrary to the Fifth Circuit's established precedent. The Fifth Circuit, in a lengthy opinion binding on the Eleventh Circuit, expressly held Congress intended for works containing obscenity to be protected under copyright law:

> It appears to us that Congress has concluded that the constitutional purpose of its copyright power, '(t)o promote the Progress of Science and useful Arts,' U.S.Const. art. 1, s 8, cl. 8, is best served by allowing all creative works (in a copyrightable format) to be accorded copyright protection regardless of subject matter or content, trusting to the public taste to reward creators of useful works and to deny creators of useless works any reward.

<u>Mitchell Bros. Film Group v. Cinema Adult Theater</u>, 604 F. 2d 852, 855 (5th Cir. 1979) (emphasis added).

"Denying copyright protection to works adjudged obscene by the standards of one era would frequently result in lack of copyright protection (and thus lack of financial incentive to create) for works that later generations might consider to be not only non-obscene but even of great literary merit." <u>Id.</u> at 857. Congress carefully determined what should and should not be

2

copyrightable, leaving no room for moral considerations. "[I]t is evident to us that it is inappropriate for a court, in the absence of some guidance or authorization from the legislature, to interpose its moral views between an author and his willing audience." Id. at 861.

### III.  JOINDER IS PROPER

The Middle District of Florida has consistently found the actions of the Defendants in copyright infringement cases are sufficient to meet the standards of joinder. See K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC (M.D. Fl. 2011); see also Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012).

> Based on these allegations, the Court finds that Plaintiff's claims against the Defendants are logically related. Each John Doe Defendant is a possible source for the Plaintiff's work, and may be responsible for distributing the movie to other John Doe Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.

Id.

#### A.  The Infringement Occurred Through a Series of Transactions

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of

3

transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### i. Series of Transactions Explained By the Michigan Court

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expanding substantial effort to understand the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

<u>Patrick Collins, Inc. v. John Does 1-21</u>, CIV.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012). Significantly, Judge Randon than explained through the force of clear deductive logic that each Defendant obtained the piece of plaintiff's movie in one of four ways all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

4

> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Id. Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

Id.

### B. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time. As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

5

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Michigan Court further explained that time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

### a. The Time Period Amongst the Defendants is Reasonable Under Eleventh Circuit Case Law

In Alexander v. Fulton County, Ga., 207 F.3d 1303 (11th Cir. 2000) overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) the Eleventh Circuit held a short time frame existed when the actions by the defendant took place within a year.

> As for the first requirement, all of the Plaintiffs' claims stem from the same core allegation that they were subject to a *systemic* pattern or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett in her first year in office. Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame.

Id. at 1324. (Emphasis added). Here, all of the defendants engaged in the same systematic pattern of infringement and the time frame between the defendants on Exhibit A exists in approximately three months from the first hit date to the last hit date.

### b. Other Courts Have Held the Time Frame in BitTorrent Actions is Irrelevant

The Northern District of California has also explained why the time gap in BitTorrent infringement cases does not impact the basic principles of joinder. "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long

6

as the alleged defendants participate in the same swarm, downloading and uploading the same file." First Time Videos, LLC v. Does 1-95, C 11-3822 MEJ, 2011 WL 4724882 (N.D. Cal. Oct. 7, 2011). "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." Id.

Other courts, when ruling on the issue of joinder have held that even when conduct occurs over a lengthy period of time, defendants may still be properly joined as long as the conduct is reasonably related. See Kedra v. City of Philadelphia, 454 F. Supp. 652, 662 (E.D. Pa. 1978) (holding joinder is proper when claims against police officers including unlawful searches, detentions, beatings and similar occurrences of multiple plaintiffs took place over a period of time).

> There is no logical reason why the systematic conduct alleged could not extend over a lengthy time period and, on the face of these allegations, there is nothing about the extended time span that attenuates the factual relationship among all of these events. The claims against the defendants "aris(e) out of the same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a), and therefore joinder of defendants in this case is proper.

Id.  The case at hand is similar.  While the actions of each of the defendants may have taken place over a period of time, the actions all arose from one initial seed and all display the same systematic conduct which is reasonably related.

### C. There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact.  "The Plaintiff meets this requirement.  In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-

7

FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

### D. Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This Stage

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency." Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

The Southern District of New York addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." Digital Sin, at FN 6.

## IV. THIS COURT SHOULD NOT QUASH THE SUBPOENA

### A. Plaintiff's Only Option to Identify the Infringer is Through His or Her IP Address

Defendant's IP address is the only way to identify the infringer. Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. At this stage of the litigation process it is sufficient that Plaintiff's complaint properly pled that Defendant is liable for direct and contributory infringement. These allegations are reasonable because the subscriber is the most likely infringer. The Eastern District of Pennsylvania recently addressed this exact issue and noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and

8

location of persons who know of any discoverable matter." Raw Films, Ltd. v. John Does 1-15, Case No. 11-7248, at 14 (E.D. Pa. March 23, 2012). Further, when addressing the issue of whether the infringer is the account holder of the IP address, the court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Id. The court also held, "although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." Id. at 19.

This Court has granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has shown good cause in that it has no other way to identify the Defendants and proceed with its copyright infringement case against them. Plaintiff has requested only the identifying information of the Defendants from their ISPs. As other courts have explained, the information Plaintiff seeks is highly relevant.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. The information sought is thus highly relevant to the plaintiff's claims.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).

The Eastern District of Pennsylvania court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Id. at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Id.

9

Plaintiff believes that recent technological advances make it more likely that a wireless account will be secured and can easily be traced to a household where the subscriber either is the infringer or knows the infringer. Recently, PC Magazine published an article regarding the scarcity of open wireless signals. "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[1] The author continues to explain why routers are now more likely to be secured. "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software. As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[2] This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households do have closed, protected wireless that are not likely to be used by a neighbor or interloper.

Further, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes. In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[3]

The Eastern District of Pennsylvania court directly addressed whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be

---

[1] See Free Wi-Fi is Gone Forever www.pcmag.com/article2/0,2817,2402137,00.asp
[2] Id.
[3] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

10

that a third party used that subscriber's IP address to commit the infringement alleged in this case.

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012). (Internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." Id.

### B. Plaintiff Has Demonstrated Good Cause

Defendant fails to state with any specificity Plaintiff's alleged lack of good faith in bringing this suit. This Court has found Plaintiff has demonstrated good cause. See Doc. 6. Recently the Eastern District of Michigan addressed Defendant's argument, stating that an unsubstantiated claim of improper settlement tactics does not justify quashing an otherwise valid subpoena. Third Degree Films v. Does 1-36, 11-CV-15200 (E.D. Mich. May 29, 2012).

> To the extent that it is independent, the Court notes that while Defendant claims that this suit was brought only to scare up settlements (Def.'s Mot. to Sever at 2, 11), Defendant has offered no case-specific facts supporting this claim. Rather, Defendant relies on the conduct of adult-film companies in other cases. This guilt-by-association argument does not justify quashing the subpoena that this Plaintiff, Third Degree Films, served on Defendant's ISP pursuant to an Order entered by Judge Murphy allowing this discovery.

Id. (Emphasis added).

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity. If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis. Any such holding would be contrary to existing law and the express policy of Congress. In 1999 Congress intentionally amended the Copyright Act to deter individuals from infringing copyrights on the internet by increasing the statutory remedies:

> Congress did contemplate that suits like this [against individuals] were within

11

> the Act. Congress last amended the Copyright Act in 1999 <u>to increase the minimum and maximum awards</u> available under § 504(c). See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that <u>consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement.</u> Congress found that "copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies," and cautioned that "the potential for this problem to worsen is great."

<u>Sony v. Tennenbaum,</u> 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

During her time as Register of Copyright, Mary Beth Peters explained the rights of copyright holders in peer-to-peer infringement actions to the Senate Judiciary Committee. "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement." [4] Ms. Peters further explained the significant need for exactly the type of copyright infringement claims that are before this Court:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. <u>For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences.</u> Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or <u>against the persons engaging in individual acts of infringement using such services</u>.

<u>Id</u>. (Emphasis added).

### C. **Plaintiff's Settlements are Proper**

---

[4] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

12

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> The John Doe Defendant's argument about coercive settlements is simply without any merit in those cases where the John Doe Defendant is represented by counsel. And, second, the John Doe Defendants' argument is misguided in that this type of case creates special circumstances that would require judicial review of any motivation to settle, and the Court is not inclined to create a special proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, i.e. his or her right to defend and litigate this lawsuit.

Id. at *7.

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." Marek v. Chesny 473 U.S. 1, 11 (1985). Further, Plaintiff has a First Amendment right under the petition clause to make the demand. See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

### D. PERSONAL JURISDICTION AND VENUE ARE PROPER

"[M]ost courts have held that a plaintiff succeeds in making out a prima facie case of personal jurisdiction where, relying on geolocation software that can identify the likely geographical locations of IP addresses, the plaintiff alleges that all defendants reside in the state within which the court is located." Digital Sin, Inc. v. Does 1-27, 12 CIV. 3873 JMF, 2012 WL 2036035 (S.D.N.Y. June 6, 2012). Here, Plaintiff has made a prima facie case of personal

13

jurisdiction because it has used geolocation software to determine that the Doe Defendants all live in this state and in this district.

## V. THIS COURT SHOULD NOT ISSUE A PROTECTIVE ORDER

"The party 'seeking a protective order carries the burden of showing good cause and/or the right to be protected.'" Nathai v. Florida Detroit Diesel-Allison, Inc., 3:09-CV-1-J-20HTS, 2009 WL 2424570 (M.D. Fla. Aug. 5, 2009). "To make a showing of good cause, the movant has the burden of showing the injury 'with specificity.'" Trinos v. Quality Staffing Services Corp., 250 F.R.D. 696, 698 (S.D. Fla. 2008) (internal citations omitted). Defendant fails to show any specific needs for a protective order. On the one hand, Defendant claims that Plaintiff has an improper purpose for failing to serve Defendants, but he then seeks a protective order claiming it would be unjust if he himself were named and served.

The Southern District of Florida has twice denied similar defendants' requests for Protective Orders. See Boy Racer, Inc. v. John Does 1-34, 11-23035, 2012 WL 1535703, at *3 (S.D. Fla. May 1, 2012) (following AF Holdings, LLC v. Does 1-162, 11-23036-CIV, 2012 WL 488217 (S.D. Fla. Feb. 14, 2012).

> The *AF Holdings* court also rejected the same type of extortion arguments raised in this case. In doing so, that court relied on the *Liberty Media Holdings* case for the notion that "the potential embarrassment or social stigma that [the Doe Defendants] may face once their identities are released in connection with this lawsuit is not grounds for allowing them to proceed anonymously."

Id. at *4 (citing Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05, 821 F. Supp. 2d 444 (D. Mass. 2011). In this case it seems particularly questionable that Defendant would be subject to any so called "settlement tactics" when Defendant is represented by counsel.

14

## VI.  THIS COURT SHOULD NOT DISMISS THE COMPLAINT

Last month this Court recommended a similar motion to dismiss be denied because the defendant had not yet been named and served.  See Malibu Media v. John Does 1-13, 2:12-cv-0177-JES-SPC (M.D. Fl. June 6, 2012) (Exh. B).  Likewise, Defendant's Motion to Dismiss should also be denied because the Defendant has not yet been identified.  This Court, citing the District Court of the District of Columbia, found that Motions to Dismiss at this stage of the litigation process are premature.  Id.

> Plaintiff has yet to formally identify any of the John Doe Defendants named in the Complaint or serve them with process. Although the movants generally assume that they will be named as defendants once their contact information is turned over to Plaintiff by their ISP, the Court cannot automatically draw that conclusion. If as many movants have asserted, their internet accounts were used by third parties to unlawfully infringe Plaintiff's copyrighted film, then it is those parties, rather than the movants themselves, who should properly be named as defendants. Until Plaintiff formally names and serves each defendant, the Court cannot be certain whether any of the movants will be compelled to defend this action as parties.

Id. citing West Coast Productions, Inc. v. Does 1–5,829, 275 F.R.D. 9, 14 (D.D.C. 2011). Additionally here, Plaintiff pled that the Doe Defendants committed the infringement. Black letter law requires the Court to accept these allegations as true. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

Further, Plaintiff properly pled defendants were jointly and severally liable.  Defendant argues Plaintiff should disclose its settlements in order to determine the damages owed for joint and several liability.  This argument is also premature.  After Plaintiff obtains a judgment this discovery may be warranted.  Until that point, Plaintiff may elect between the remedies available.  Only when a verdict is issued and Plaintiff elects to receive actual damages would the amount of compensation thus far received be relevant and discoverable.

Additionally, Plaintiff's complaint properly pled injunctive relief. "The liberal pleading standard of the federal rules also dictates that the precise label designating the nature of the claim or the theory upon which relief is sought is not determinative." § 1237 Statement of Particular Matters—Copyrights, Trademarks, and Unfair Competition, 5 Fed. Prac. & Proc. Civ. § 1237 (3d ed.) The plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Millennium Travel & Promotions, Inc. v. Classic Promotions & Premiums, Inc., 608-CV-290-ORL-28KRS, 2008 WL 2275555 (M.D. Fla. June 2, 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir.2001). "Instead, the complaint need only 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Id. "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food and Comm'l Workers Int'l Union, 866 F.2d 1380, 1384. (11th Cir.1989).

Fed. R. Civ. P. 8 makes clear that Plaintiff may combine different types of relief in its complaint. "A pleading that states a claim for relief must contain… (3)a demand for the relief sought, which may include relief in the alternative or different types of relief." Here, Plaintiff's complaint clearly identified the alleged infringement and sufficiently put Defendant on notice as to the claims being asserted against him and the grounds on which it rests. It is not necessary at this stage that Plaintiff quantify its damages.

VII. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject

motion.

Dated: August 10, 2012

                              Respectfully submitted,

                              By: /s/ *M. Keith Lipscomb*
                              M. Keith Lipscomb (429554)
                              klipsomb@lebfirm.com
                              LIPSCOMB EISENBERG & BAKER, PL
                              2 South Biscayne Blvd.
                              Penthouse 3800
                              Miami, FL 33131
                              Telephone: (786) 431-2228
                              Facsimile:  (786) 431-2229
                              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                              By:  /s/ *M. Keith Lipscomb*